# 21-2995-CV

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHRISTOPHER KANE,

*Plaintiff-Appellant*,

—against—

MOUNT PLEASANT CENTRAL SCHOOL DISTRICT,
SUSAN GUINEY, FRANK VITERITTI, BRUCE FERGUSON,
NICOLE SCHIMPF, and RICHARD HENNESSY,

*Defendants-Appellees*.

## BRIEF OF PLAINTIFF-APPELLANT

**(WITH SPECIAL APPENDIX—PAGES SPA-1 TO SPA-31)**

**KEVIN T. MULHEARN, P.C.**
60 Dutch Hill Road, Suite 6B
Orangeburg, New York 10962
(845) 222-8092
kmulhearn@ktmlaw.net

*Attorneys for Plaintiff-Appellant,*
*Christopher Kane*

On Appeal from the United States District Court, Southern District
of New York: SDNY Docket No. 20-CV-7936 (CS)

# <u>TABLE OF CONTENTS</u>

**PAGE:**

**TABLE OF AUTHORITIES** iv

**JURISDICTIONAL STATEMENT** 1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** 2

**STATEMENT ON ORAL ARGUMENT** 4

**STATEMENT OF FACTS** 5

**STATEMENT OF THE CASE** 12

**SUMMARY OF THE ARGUMENT** 16

**STANDARD OF REVIEW** 18

**ARGUMENT** 19

**I.  WHEN PLAINTIFF EXPRESSLY ACKNOWLEDGED THAT NEW YORK'S GENERAL STATUTE OF LIMITATIONS FOR PERSONAL INJURY ACTIONS (CPLR § 214(5)) WAS THE STATUTE OF LIMITATIONS THAT THE COURT NEEDED TO APPLY TO PLAINTIFF'S TITLE IX CLAIMS, THE DISTRICT COURT ERRED IN CONCLUDING THAT PLAINTIFF HAD ARGUED THAT IT NEEDED TO BORROW AND APPLY THE NEW YORK CHILD VICTIMS ACT TO PLAINTIFF'S TITLE IX CLAIMS RATHER THAN —AND IN PLACE AND STEAD OF—CPLR § 214(5)** 19

# TABLE OF CONTENTS

PAGE:

II. THE UNITED STATES SUPREME COURT HAS
MANDATED THAT WHEN A FEDERAL COURT
BORROWS A STATE'S GENERAL PERSONAL
INJURY STATUTE OF LIMITATIONS FOR A
FEDERAL STATUTE THAT LACKS ITS OWN
STATUTE OF LIMITATIONS, IT IS ALSO
REQUIRED TO BORROW THE STATE'S
COORDINATE TOLLING AND REVIVAL
RULES AND EXCEPTIONS                                    23

III. ALL OF THE CASES IN THIS CIRCUIT WHICH
HAVE DETERMINED THAT PLAINTIFFS' *PRIMA
FACIE* UNTIMELY SECTION 1983 OR TITLE IX
CLAIMS COULD NOT BE REVIVED BY THE NEW
YORK CVA DID NOT INVOLVE A PROPER
ANALYSIS AND APPLICATION OF THE "REVIVAL"
AND "TOLLING" IMPACT OF CPLR § 214-g                   33

IV. THE DISTRICT COURT ERRED IN CONCLUDING
THAT CPLR § 214-g WAS A "SPECIALIZED
STATUTE OF LIMITATIONS" RATHER THAN A
"REVIVAL" AND "TOLLING" PROVISION                      45

V. CONTRARY TO THE DISTRICT COURT'S
CHOICE OF LAW CONCLUSION, IN ANALYZING
WHETHER A STATUTE HAS BEEN TOLLED, A
DISTRICT COURT IS NOT MERELY PERMITTED,
BUT MANDATED, TO MAKE DETERMINATIONS
BASED ON THE "PARTICULAR FACTS" OR
"PRECISE LEGAL THEORIES" OF A
PLAINTIFF'S TOLLING CLAIMS                             51

## TABLE OF CONTENTS (Cont.)

**PAGES:**

VI.    **THIS COURT SHOULD GRANT PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE AN AMENDED PLEADING BECAUSE THE DISTRICT COURT'S FUTILITY ANALYSIS AND DETERMINATION RESTED ON AN INCORRECT CONCLUSION OF LAW AS TO THE TIMELINESS OF PLAINTIFF'S TITLE IX CLAIMS**    59

**CONCLUSION**    61

**CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) AND LOCAL RULE 28.1.1**    63

**SPECIAL APPENDIX**

*Special Appendix, Table of Contents*    *SPA-i-*

*Full Text of 2019 N.Y. SB 2440 (Original),*
*    Chaptered on February 14, 2019*    *SPA-1–6*

*Text of N.Y. CPLR § 214-g*    *SPA-7*

*Opinion & Order of Hon. Cathy Seibel,*
*    dated November 3, 2021 (ECF 89) [Decision on Appeal]*    *SPA-13-31*

# TABLE OF AUTHORITIES

**PAGES:**

## CASES:

*Asbestos Claimants v. U.S. Lines Reorganization Trust,*
318 F.3d 432 (2d Cir. 2003)................................................................50

*Bisson v. Martin Luther King Jr. Health Clinic,*
399 Fed. Appx. 655 (2d Cir. 2010) ...............................................55

*BL Doe 3 v. Female Academy of the Sacred Heart,*
199 A.D.3d 1419 (4th Dept. 2021) ...............................................57

*Board of Regents v. Tomanio,* ......................................................
446 U.S. 478 (1980) ................. 20, 24-25, 27, 30-33, 36, 41, 45, 48, 51-52, 56-58

*Bonneau v. Centennial Sch. Dist. No. 28J,* 666 F.3d 577 (9th Cir. 2012)..............44

*Boyle v. N. Salem Cent. Sch. Dist.,* 2020 U.S. Dist. LEXIS 82504
(SDNY 2020) ...................................................33-37, 40, 52-54, 56-57

*Carter v. Doe,* 2006 U.S. Dist. LEXIS 51856 (SDNY 2006)................................56

*City of Pontiac General Employee's Retirement System v. MBIA,*
637 F.3d 169 (2d Cir. 2011)................................................................18

*Coe v. Regan,* 2022 U.S. Dist. LEXIS 23021
(EDNY 2022) ...........................................................40-41, 52-53, 56-57

*CTS Corp. v. Waldburger,* 573 U.S. 1 (2014).................................. 34-35, 38-39, 46

*Curto v. Edmundson,* 392 F.3d 502 (2d Cir. 2004) (per curiam).....................19, 29

*De Los Santos v. Fingerson,* 1998 U.S. Dist. LEXIS 16657 (SDNY 1998)...........55

*Doe v. Baram,* 2021 U.S. Dist. LEXIS 199615 (SDNY 2021)..............................47

*Doe v. Diocese of Rockville Ctr.,* 2020 N.Y. Misc. LEXIS 1964
(Sup. Ct. Nassau Cty. 2020)................................................................47

*Doe v. Female Acad. of the Sacred Heart,*
2020 N.Y. Misc. LEXIS 18220 (Sup. Ct. Monroe Cty. 2020) ...........................58

*Doe v. NYS Office of Children & Family Servs.,* 2021 U.S. Dist. LEXIS 125965
(NDNY 2021).............................................36-40, 43, 46, 52-53, 56-57

*Gardner v. St. Bonaventure Univ., 171 F. Supp. 2d 118* (WDNY 2001) ...............58

*Hardin v. Straub,* 490 U.S. 536 (1990) ...............30-33, 36, 41, 45, 48, 52-53, 56-58

*Johnson v. Railway Express Agency, Inc.,*
421 U.S. 454 (1975) ...................... 23-25, 27-28, 30, 32-33, 36, 41, 45, 48, 52-53

## TABLE OF AUTHORITIES (Cont.)

**PAGES:**

**CASES:**

*Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ......... 18, 60

*Keitt v. City of New York*, 2010 U.S. Dist. LEXIS 91857 (SDNY 2010)..........55-56

*King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754
    (5th Cir. 2015) ................................................................... 25-26, 44-45

*Krabel v. N.Y.C. Dept. of Housing Preserv. & Dev.*, 959 F.2d 395
    (2d Cir. 1992) ........................................................................... 32

*Littlejohn v. Artuz*, 271 F.3d 360 (2d Cir. 2001) ................................ 18, 60

*M.D. v. Southington Bd. of Educ.*, 334 F.3d 217 (2d Cir. 2003).......................47-48

*McCarthy v. Volkswagen of Am.*, 55 N.Y.2d 543 (1982)....................... 55

*Metz v. St. Hugh of Lincoln Roman Catholic Church*,
    2020 N.Y. Misc. LEXIS 12492 (Sup. Ct. Nassau Cty. 2020) ............................. 50

*Owens v. Okure*, 488 U.S. 235 (1989) ...................... 26-30, 32, 44-45, 51-53, 56-58

*PC-41 Doe v. Poly Prep Country Day Sch.*,
    2021 U.S. Dist. LEXIS 181254 (EDNY 2021)...................................... 47

*Robertson v. Wegmann*, 436 U.S. 584 (1978)........................................ 24

*Wallace v. Kato*, 549 U.S. 384 (2007) .................................................. 53

*Werner v. Diocese of Rockville Ctr.*,
    2020 N.Y. Misc. LEXIS 2003 (Sup. Ct. Nassau Cty. 2020) ............................. 47

*Wilson v. Garcia*, 471 U.S. 261 (1985)............... 26-29, 32, 44-45, 48, 51-53, 56-58

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429 (SDNY 2014) ...... 19, 29, 51, 54, 56

*Zimmerman v. Poly Prep Country Day Sch.*,
    888 F. Supp. 2d 317 (EDNY 2012)..................................................... 19, 29, 54, 56

*Zumpano v. Quinn*, 6 N.Y.3d 666 (2006)................................................. 49

## TABLE OF AUTHORITIES (Cont.)

**PAGES:**

## STATUTES & TREATISES:

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

42 U.S.C. § 1981 .......................................................................... 23

42 U.S.C. § 1983 ...................... 17, 24-25, 28-29, 31, 33-34, 36-37, 40, 43-44, 55

42 U.S.C. § 1988 .......................................................................... 24

2019 New York Assembly Bill No. 2683;
   2019 Legis. Bill Hist. NY A.B. 2683 ............................................... 49-50

Federal Rules of Civil Procedure, Rule 15(a) ...................................... 60

*McKinney's CPLR 214-g Practice Commentaries* (by Vincent Alexander) .......... 48

Mich. Comp. Laws Ann. § 600.5851(1) (1987) .................................... 30

N.Y. Child Victims Act, (L. 2019 c. 11) ........................................... *passim*

N.Y. Criminal Procedure Law § 30.10(3)(f) ....................................... 11

N.Y. CPLR § 208 ................................................................. 38, 55

N.Y. CPLR § 208(b) ...................................... 2, 11, 38-39, 41-46, 48

N.Y. CPLR § 214(2) .......................................................... 24

N.Y. CPLR § 214(5) .......................................................... *passim*

N.Y. CPLR § 215(3) .......................................................... 29

N.Y. Penal Law, Article 130 .................................................. 59

Oregon Rev. Stat. § 12.110 .................................................. 44

Oregon Rev. Stat. § 12.117(1) ............................................... 44

Title IX of the Education Amendments of 1972 .............................. *passim*

## <u>JURISDICTIONAL STATEMENT</u>

The District Court exercised its federal subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, based on federal questions raised in Plaintiff's Amended Complaint: did Defendant Mount Pleasant School District ("MPCSD") violate Title IX of the Education Amendments of 1972 ("Title IX").

This Court has jurisdiction to hear this appeal of the District Court's November 3, 2021 Opinion & Order (A-13-31), in which the Hon. Cathy Seibel dismissed Plaintiff's federal claims and declined to exercise the Court's supplemental jurisdiction over Plaintiff's state law claims (thereby dismissing them as well), pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    When Plaintiff expressly acknowledged that New York's general statute of limitations for personal injury actions (CPLR § 214(5)) was the appropriate statute of limitations that applied to his Title IX claims, did the District Court err in concluding that Plaintiff had argued that the District Court needed to borrow and apply The New York Child Victims Act ("CVA") to Plaintiff's Title IX claims rather than—and in place and stead of—CPLR § 214(5)?

2.    Did the District Court err in failing to determine that CPLR § 214-g, as created by The New York CVA, was a revival and tolling statute that reflected The New York Legislature's intent to revive *all* claims involving child sexual abuse (including Title IX claims)?

3.    Did the District Court err in failing to determine that, pursuant to CPLR § 214-g, Plaintiff's Title IX claims were revived and that the applicable statute of limitations—CPLR § 214(5)—should have been tolled for two years from the effective date of the New York CVA?

4.    Did the District Court err in adopting Defendants' argument that CPLR § 208(b), which applied prospectively only and thus was not relied upon or even cited by Plaintiff, transmogrified The New York CVA (and the applicable CPLR § 214-g) from a "revival and tolling" provision into a "specialized statute of limitations" for child sex abuse cases?

5.     Did the District Court err in holding that it was forbidden from reviewing the "particular facts" and "precise legal theory" that Plaintiff invoked in support of his argument that CPLR § 214-g revived and tolled his Title IX claims?

6.     Did the District Court err in denying Plaintiff's motion for leave to amend his pleading on the ground of futility, when the District Court's futility analysis rested on an incorrect conclusion of law as to the timeliness of Plaintiff's Title IX claims?

## **STATEMENT ON ORAL ARGUMENT**

Plaintiff-Appellant respectfully requests fifteen (15) minutes for oral argument of this appeal.  Kevin T. Mulhearn, Esq. will argue this appeal on behalf of Plaintiff-Appellant.

## STATEMENT OF FACTS

### *Background of Dispute*

This case arises from Plaintiff's experiences as a high school freshman at Westlake High School ("Westlake"), a school operated by Defendant Mount Pleasant Central School District ("MPCSD"), in 2008 and 2009.

In August 2008, as an incoming freshman, Plaintiff started participating in football practices with the varsity football team (as the junior varsity team had recently been disbanded). (*See* Amended Complaint, dated February 2, 2021 (A-32-97) (ECF 60) ("AC") at ¶¶ 46-47) (A-40). At the time, Plaintiff was a skinny 13-year-old boy (*Id.* ¶ 53), but as a member of the football team he was required to practice and share the locker room with students who were seventeen or eighteen-years-old. (*Id.* ¶ 47) (A-40).

Plaintiff quickly became the target of bullying from older teammates, who "selected him to be the 'team bitch,' cruelly mocked him for his not-yet-fully developed sexual organs, questioned his sexual preferences, and taunted and threatened him by letting him know that he should expect to receive harsh treatment from them for the rest of the 2008 football season." (*Id.* ¶ *54*). Similar taunting and verbal abuse continued throughout the football season. (*Id.* ¶¶ 55, 60, 62, 89, 92).

As early as August 23 or 24, 2008, Plaintiff told his parents that he was being harassed and hazed, without providing specifics, and his parents promptly spoke with the head football coach, Defendant Richard Hennessy, who assured Plaintiff's parents that he would "take care of it." (*Id.* ¶¶ 65-72). Hennessy subsequently warned the team that he would not tolerate hazing, but he made no changes to prevent or mitigate hazing, took no action to discipline any individuals, and never followed up to ascertain the specific facts or identify the parties involved in the hazing incidents about which Plaintiff complained. (*Id.* ¶¶ 75-77) (A-44-45).

Plaintiff alleges that one older teammate—Philip Ciccone, a 16 or 17-year-old junior (*Id.* ¶ 59)—"flash[ed]" Plaintiff "by thrusting his naked penis in close proximity to Plaintiff's face" on at least ten occasions between August and November 2008. (*Id.* ¶ 56) (A-42-43). On August 20 or 21, 2008, Ciccone flashed his penis at Plaintiff in the school parking lot. (*Id.* ¶ 62). On August 25 or 26, 2008, Ciccone "walk[ed] up to Plaintiff and plac[ed] his naked penis on Plaintiff's shoulder." (*Id.* ¶ 78). Ciccone later bragged about this conduct to numerous classmates. (*Id.* ¶¶ 84-85) (A-42-43).

Plaintiff alleges that Ciccone also engaged in this kind of aggressive flashing of other students at Westlake (*Id.* ¶¶ 136-138, 193-194), and on one occasion was suspended by the school for this kind of sexual misconduct. (*Id.* ¶ 194) (A-55, 68).

Plaintiff also alleges that he was also bullied by an older teammate—Ben Karol—who was gratuitously violent with Plaintiff during practices, including grabbing his facemask and throwing him to the ground (without any arguable sports-related justification). (*Id.* ¶¶ 87, 89-91, 93). This teammate also called Plaintiff a "pussy" and "bitch" and would frequently make movements indicating that he was about to punch Plaintiff in the face. (*Id.* ¶¶ 92-93). On or about October 20, 2008, after enduring yet another unprovoked physical assault from Karol, Plaintiff told Karol that he would get someone who worked with his father to beat up and kill him. (*Id.* ¶¶ 94-99) (A-49). This incident was witnessed by Westlake's football coaches. (*Id.* ¶¶ 105-106). At no time did the football coaches ever reproach or discipline Plaintiff for his "empty, non-serious, transient remark" to Karol. (*Id.* ¶¶ 106-107) (A-48, 50).

On January 9, 2009, Plaintiff informed his parents for the first time about the specifics of the incidents involving Ciccone, including that Ciccone had placed his penis on Plaintiff's shoulder and frequently placed his penis inches from Plaintiff's face. (*Id.* ¶¶ 112-113, 116) (A-51-52).

That same evening, Plaintiff's mother reported these allegations to the Westlake Principal, Defendant Frank Viteritti (*Id.* ¶ 118), and on January 10, 2009, Plaintiff's mother reported Ciccone's conduct to the local police. (*Id.* ¶ 117) (A-52).

On January 12, 2009, Plaintiff's parents met with Viteritti as well as MPCSD superintendent, Defendant Susan Guiney, to discuss the incidents. (*Id.* ¶¶ 120, 123). Ultimately, Guiney and Viteritti directed Defendant Nicole Schimpf, the MPCSD Title IX Complaint Officer, and Defendant Bruce Ferguson, Westlake's Assistant Principal, to investigate Plaintiff's allegations. (*Id.* ¶¶ 124, 126) (A-52-53).

Plaintiff alleges that Defendants' "investigation" was a "sham" with "a preordained conclusion," in that Defendants' goals were to shield the older students from any real punishment commensurate with their actions and to protect the school from reputational damage and negative publicity. (*Id.* ¶¶ 127-129, 132-134) (A-53-55).

Plaintiff alleges that the investigators, Defendant Ferguson and Schimpf, immediately shifted the focus of their investigation from Plaintiff's serious allegations against his older teammates into a fabricated and manufactured narrative: *Plaintiff* was the Westlake student who had engaged in serious misconduct. (*Id.* ¶¶ 131-136) (A-54-55).

In January 2009, Defendant Ferguson interviewed Plaintiff and focused his questions not on the prolonged campaign of abuse, harassment, and hazing that Plaintiff had endured for the entire 2008 football season, but on the empty "threat" that Plaintiff had made to Ben Karol after Karol's October 2008 unprovoked,

unpunished, and unaddressed physical assault—in view of Westlake football coaches—on the football field. (*Id.* ¶¶ 139-140) (A-55-56).

On January 21, 2009, Defendants suspended Plaintiff for five school days for what they described as "misconduct which endangered the safety, health, morals and/or welfare of . . . others"—based on his gratuitous and empty "threat" to Karol in October 2008. (*Id.* ¶ 141). Defendants did not conduct any substantive threat assessment or even compel Plaintiff to undergo a mental health evaluation to assess the seriousness of the "threat," because they knew full well that Plaintiff had never posed any real threat to Ben Karol or anyone else. (*Id.* ¶¶ 145-146) (A-57).

On April 3, 2009, Defendant Schimpf forwarded Plaintiff's parents a letter in which she: (1) informed them that the school board's investigation was "concluded," and (2) notified them that because "information about this case" was "confidential," Plaintiff would "face disciplinary action, including suspension from school," if he "shares any information about this investigation and/or its findings." (*Id.* ¶ 153) (A-60).

Plaintiff asserts that Defendant Schimpf's warning about Plaintiff's continuing "confidentiality" obligations had no basis in New York or federal law and was a fraudulent misrepresentation designed to coerce and dissuade Plaintiff and his parents from publicizing Plaintiff's truthful allegations of sexual harassment and assault at Westlake. (*Id.* ¶¶ 171-176) (A-64-65).

Plaintiff further alleges that the school's punishment imposed against Ciccone was not severe, and was even less than the retaliatory punishment imposed against Plaintiff himself for trumped up "misconduct." (*Id.* ¶¶ 171-176). Defendant MPCSD thus failed to impose a penalty against Ciccone that "was remotely commensurate with the nature, gravity, and magnitude of his cruel, malicious, intentional, unprovoked, and recidivist conduct against Plaintiff (and other students)." (*Id.* ¶ 178) (A-65-66).

Plaintiff pleads two Title IX claims against Defendant MPCSD in the Amended Complaint ("AC") (AC at ¶¶ 208-238 (A-71-77) and ¶¶ 244-253 (A-77-80): (1) for violating Title IX because its high-ranking administrators had actual knowledge but were deliberately indifferent to the sexual misconduct and harassment inflicted upon Plaintiff by Ciccone and other football players through a "continuous, vicious, and unrelenting pattern and practice of sexual harassment, serialized hazing, bullying, and verbal abuse of Plaintiff at Westlake (AC ¶ 217) (A-72), and (2) for retaliating against Plaintiff in violation of Title IX by, *inter alia*, suspending Plaintiff from Westlake for five school days without cause, creating a toxic and hostile environment for Plaintiff at the school, falsely labeling Plaintiff as a "snitch" and "troublemaker," and damaging Plaintiff's reputation. (*See* AC ¶ 248) (A-79).

### *Enactment of The New York Child Victims Act*

On February 14, 2019, New York State enacted The New York Child Victims Act (L. 2019 c. 11) ("CVA"), which: (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18 (*see* New York Criminal Procedure Law § 30.10(3)(f)); (2) *prospectively* extended the time in which civil actions based upon such criminal conduct may be brought until the child victim reaches the age of 55 (*see* New York CPLR § 208(b)); and (3) opened a one-year window[1] reviving civil actions for which the applicable statute of limitations had already run (even in cases that were litigated and dismissed on limitations grounds), commencing August 14, 2019 (*see* CPLR § 214-g).

In his argument to the District Court on the timeliness of his Title IX claims, Plaintiff relied *exclusively* on CPLR § 214-g.

The original full text of The New York CVA, including CPLR § 214-g, is set forth in the Special Appendix behind this brief at SPA-1 through SPA-6. The full and current text of CPLR § 214-g is reprinted herein at SPA-7.

---

[1] On August 3, 2020, New York subsequently extended CPLR § 214-g's revival window for another year, until August 14, 2021. The New York CVA's revival window has thus now closed. (*See* SPA-7).

## **STATEMENT OF THE CASE**

### ***Procedural History***

On September 25, 2020, Plaintiff filed his initial Complaint in this action (ECF 1).   This case was assigned to the Honorable Cathy Seibel.

On February 3, 2021, Plaintiff filed his Amended Complaint (ECF 60). Plaintiff asserted Title IX claims against Defendant MPCSD (for both deliberate indifference to discrimination on the basis of gender and retaliation), as well as various New York state common law claims against the individual Defendants.

On March 17, 2021, Defendants filed two motions to dismiss the Amended Complaint on timeliness grounds (A-9), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with supporting memoranda of law (ECF 69, "Defendants' Memo.")) and ECF 72).[2]

On May 7, 2021, Plaintiff filed a 28-page opposition brief.  (ECF 83) ("Plaintiff's Memo.").  Plaintiff also filed a notice of cross-motion, dated April 23, 2021 (ECF 77) (which included as an exhibit a proposed Second Amended Complaint (ECF 76-2) (A-131-193).  Plaintiff's cross-motion sought leave to amend the operative pleading in order to amplify and/or clarify the sufficiency of the "sexual gratification" element, which is a prerequisite for all sex crimes against

---

[2] Plaintiff asserted a claim for sexual battery against Defendant Ciccone but has since voluntarily withdrawn that claim.  (ECF 87).

minors as memorialized in Article 130 of the New York Penal Law, and as referenced in the New York CVA.

On June 1, 2021, Defendants filed their Reply Memorandum of Law ("Defendants' Reply Memo.") (ECF 84). The Court below rejected Plaintiff's request for oral argument.

### *The District Court's Decision*

On November 3, 2021, the Honorable Cathy Seibel, District Judge, issued an Opinion and Order (ECF 89) in which she dismissed Plaintiff's Title IX claims exclusively on timeliness grounds, declined to exercise the Court's supplemental jurisdiction over Plaintiff's New York State common law claims (thereby dismissing them), and denied Plaintiff's cross-motion for leave to amend on the ground of futility. (A-13-31).

Plaintiff had argued that Plaintiff's Title IX claims were subject to New York's three-year general statute of limitations for personal injuries (CPLR § 214(5)), but should be deemed timely because they were revived and tolled (for two years) by CPLR § 214-g, the revival and tolling provision of The New York CVA, which was enacted on February 14, 2019.

The District Court, however, reframed Plaintiff's argument and concluded—without foundation—that Plaintiff had requested that the District Court borrow and apply CPLR § 214-g in place and stead of CPLR § 214(5), as the applicable statute of limitations for his Title IX claims.

Plaintiff had clearly asked the District Court to apply both CPLR § 214(5) *and* New York's coordinate revival and tolling rules to his Title IX claims. The District Court nevertheless determined that Plaintiff had actually asked it to apply CPLR § 214-g, in place and stead of CPLR § 214(5), as the applicable statute of limitations. (A-21, 25-26). The District Court cited inapposite Supreme Court precedent which holds that when a federal court must borrow a state statute of limitations and apply it to a federal statutory claim where the federal statute lacks its own statute of limitations, it must apply the state's general statute of limitations for personal injuries. Plaintiff's argument expressly acknowledged the viability of that rule but emphasized its well-recognized and indispensable corollary: in borrowing a state's general statute of limitations for personal injuries, a federal court must also borrow the state's coordinate tolling and revival rules and exceptions.

The District Court mischaracterized Plaintiff's keystone argument and shifted its analysis to answer a question that was not before it and which was not even in dispute: which of the two competing statutes of limitation—CPLR § 214(5) or CPLR § 214-g—applied to Plaintiff's Title IX claims. (A-21, 25-26).

The Court below held that because a federal court must borrow and apply a state's general statute of limitations for personal injuries, the three-year limitation period as set forth in CPLR § 214(5) applied. (A-27). The District Court bypassed a detailed analysis of § 214-g as a revival and tolling provision and instead summarily concluded that Plaintiff's Title IX claims were time-barred because more than three years had passed since Plaintiff's Title IX claims accrued. (A-27).

The District Court entered a Judgment on November 3, 2021 (ECF 90) (A-194), which, relying upon its Opinion & Order, dismissed Plaintiff's Title IX claims, as well as all of his New York State common law claims.

Plaintiff filed his Notice of Appeal on December 3, 2021 (ECF 93) (A-195). This appeal is timely.

# SUMMARY OF THE ARGUMENT

The Supreme Court has established a sacrosanct rule: *when a district court borrows a state's general personal injury statute of limitations and applies it to a federal statutory claim without its own statute of limitations, the district court must also borrow the state's provisions regarding tolling, revival, and questions of application.*

Plaintiff argued to the Court below that New York CPLR § 214-g (enacted on February 14, 2019 as the retroactive component of The New York CVA) revived Plaintiff's Title IX claims and tolled the applicable borrowed New York statute of limitations for personal injuries—CPLR § 214(5)—until August 14, 2021. This case thus should have been about revival and tolling, rather than a choice of law selection as to which of two competing statutes of limitation— CPLR § 214(5) or CPLR § 214-g—needed to be applied to Plaintiff's Title IX claims.

Without rhyme or reason, the District Court concluded that Plaintiff had argued that the District Court needed to borrow CPLR § 214-g rather than—and in place and stead of—CPLR § 214(5) (A-21, 25-26). *Plaintiff never made any such either-or argument.* Plaintiff, to the contrary, expressly acknowledged that CPLR § 214(5) was the appropriate statute of limitations that the Court below needed to apply to his Title IX claims.

With the central issue thus recast, the District Court concluded that it was required to apply New York's three-year general statute of limitations for personal injuries— CPLR § 214(5)—and dismissed Plaintiff's Title IX claims as untimely on that basis. (A-26-27).

Three other courts in this circuit have dismissed efforts by plaintiffs to invoke The New York CVA to render federal claims (under 42 U.S.C. § 1983 and Title IX) timely. In each of these cases, the plaintiffs asked the court to make a binary, either-or choice of law and apply The New York CVA in place and stead of CPLR § 214(5) as *the* borrowed statute of limitations applicable to their federal claims. Here, Plaintiff unquestionably did not do that. But the District Court, without any justification, insisted that he had.

The District Court's patently false finding of fact as to the fundamental nature of Plaintiff's argument infects each and every part of its incorrect analysis of the Title IX timeliness issue. This case is about the application of New York's revival and tolling rules. It is not, and never was, about a choice of *which* statute of limitations law to be applied.

## **STANDARD OF REVIEW**

The Second Circuit "review[s] *de novo* a District Court's grant of a defendant's motion to dismiss … [and a] district court's legal conclusions, including its interpretation and application of a statute of limitations, are likewise reviewed *de novo*. *City of Pontiac General Employee's Retirement System v. MBIA*, 637 F.3d 169, 173 (2d Cir. 2011). Accordingly, each of the issues on appeal related to the District Court's dismissal of Plaintiff's Amended Complaint should be reviewed *de novo* by this Court.

The Second Circuit generally reviews a district court's denial of a motion to amend pleadings under an abuse of discretion standard. *Littlejohn v. Artuz*, 271 F.3d 360 (2d Cir. 2001). Where the denial of leave to amend is based upon a legal interpretation, however, this Court reviews the decision *de novo*. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 242 (2d Cir. 2007). Where, as here, the district court denies a party's motion for leave to amend on the ground of futility, this Court reviews *de novo* whether the district court's futility analysis rests on an incorrect conclusion of law. *Id.* at 242 & 244.

All issues raised in this appeal, therefore, should be reviewed by this Court *de novo*.

**ARGUMENT**

I. **WHEN PLAINTIFF EXPRESSLY ACKNOWLEDGED THAT
NEW YORK'S GENERAL STATUTE OF LIMITATIONS FOR
PERSONAL INJURY ACTIONS (CPLR § 214(5)) WAS THE
STATUTE OF LIMITATIONS THAT THE COURT NEEDED TO
APPLY TO PLAINTIFF'S TITLE IX CLAIMS, THE DISTRICT
COURT ERRED IN CONCLUDING THAT PLAINTIFF HAD
ARGUED THAT IT NEEDED TO BORROW AND APPLY THE
NEW YORK CHILD VICTIMS ACT TO PLAINTIFF'S TITLE IX
CLAIMS RATHER THAN—AND IN PLACE AND STEAD OF—
CPLR § 214(5)**

As Title IX does not contain its own statute of limitations, a court must apply

"the most appropriate or analogous state statute of limitations to Title IX claims."

*Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam); *see also*,

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 333 (EDNY 2012);

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 437 (SDNY 2014). Numerous courts

in this circuit have determined that Title IX actions—like 42 U.S.C. § 1983 actions—

are most analogous to personal injury actions, and are thus governed by New York's

three-year statute of limitations for personal injury actions as set forth in New York

Civil Practice Laws and Rules ("CPLR") § 214(5). *See Curto*, 392 F.3d at 504,

*Zimmerman*, 888 F. Supp. 2d at 333; *Twersky, 993 F. Supp. 2d at 437*; Plaintiff's

Memo. at 14-17, 19-20, & 24.

In the Court below, Plaintiff specifically and repeatedly acknowledged that

New York's general personal injury statute, CPLR § 214(5), was the statute of

limitations that the District Court needed to "borrow" from New York State and

apply to Plaintiff's Title IX claims. *See* Plaintiff's Memo. at 14-17, 19-20, & 24: ("*[T]he N.Y. CVA tolls the borrowed New York State statute of* limitations *for [Plaintiff's Title IX] claims (N.Y. CPLR § 214(5)) until August 14, 2021.*") (emphasis added) (parenthetical in original).

Plaintiff's Title IX timeliness argument was simple and straightforward: in applying its borrowed state statute of limitations (CPLR § 214(5)) to Plaintiff's Title IX claims: (1) the District Court was also required to borrow New York State's coordinate tolling and revival rules and exceptions, *see* Plaintiff's Memo. at 14-17, 19-20, & 24, *citing, Board of Regents v. Tomanio*, 446 U.S. 478, 485-86 (1980); and (2) CPLR § 214-g, which was enacted in 2019 as part of The New York CVA, is such a tolling and revival statute that extended CPLR § 214(5), as applied to Plaintiff's Title IX claims, until August 14, 2021. *See* Plaintiff's Memo. (ECF 83) at 14-17, 19-20, & 24.

The District Court nevertheless repeatedly reframed Plaintiff's keystone argument and erroneously concluded that Plaintiff was requesting and requiring the Court to make a bright-line choice of *which* New York personal injury statute applied to Plaintiff's Title IX claims: CPLR § 214(5) (New York's general personal injury statute) *or* the New York CVA:

> Plaintiff argues that because the conduct that gives rise to his Title IX claims constitutes a sexual offense under New York law, the applicable statute of limitations is not the

general personal injury statute of limitations but, instead, the exception for sexual abuse claims created by the CVA.

(A-21) (*Plaintiff never made any such argument.*)

> [Plaintiff requests that the court] apply[ ] the CVA here, *in lieu* of New York's general personal injury statute of limitations.

(A-25) (emphasis added) (*Plaintiff never made any such request.*)

> [T]he [*Boyle*] court spends several paragraphs addressing essentially the same question raised here—that is, *whether the general personal injury statute or the specialized CVA applies to a federal civil rights claim.*

(A-25) (emphasis added) (*Plaintiff never raised such an either-or question*).

> Which statute of limitations applies is plainly within the scope of what a judge may consider and rule on when the parties raise the issue of whether a claim is timely[.]

(A-25-26).

The District Court thus manufactured and erected a straw man only to knock it down. Plaintiff *never* argued to the Court below that: (1) CPLR § 214(5) was not the proper statute of limitations to be applied to Plaintiff's Title IX claims, or (2) that CPLR § 214-g was a specialized statute of limitations that supplanted CPLR § 214(5).

Contrary to how the District Court framed the issue, Plaintiff did not ask the Court below to make a choice between competing statutes of limitation and apply CPLR § 214-g to Plaintiff's Title IX claims in place and stead of CPLR § 214(5).

Plaintiff instead correctly pointed out to the District Court that CPLR § 214-g "revived" Plaintiff's Title IX claims and "tolled" the applicable borrowed statute of limitations (CPLR § 214(5)) that applied to those claims, until August 14, 2021. (Plaintiff's Memo. at 14-17, 19-20, & 24). The District Court, however, by mischaracterizing Plaintiff's argument, resurrected an inapposite body of law related to a court's choice of *which* competing statute of limitations to borrow, and ignored the on-point body of law cited by Plaintiff related to revival, tolling, and application. The District Court's analysis of the issue, which rests upon a concocted threshold premise, is patently wrong.

The District Court's false finding of fact—that Plaintiff argued that the New York CVA, rather than CPLR § 214(5), was the applicable statute of limitations that the Court needed to borrow and apply to Plaintiff's Title IX claims—is refuted by the record. This fiction, however, which was also advanced by Defendants in their Reply Memorandum (at 1, 3-7), underscores and infects every component of the District Court's Title IX timeliness analysis.

## II. THE UNITED STATES SUPREME COURT HAS MANDATED THAT WHEN A FEDERAL COURT BORROWS A STATE'S GENERAL PERSONAL INJURY STATUTE OF LIMITATIONS FOR A FEDERAL STATUTE THAT LACKS ITS OWN STATUTE OF LIMITATIONS, IT IS ALSO REQUIRED TO BORROW THE STATE'S COORDINATE TOLLING AND REVIVAL RULES AND <u>EXCEPTIONS</u>

In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), the Supreme Court examined the issue of which statute of limitations needed to be applied to plaintiff's 42 U.S.C. § 1981 suit for racial discrimination against his former employer. The *Johnson* Court held that because § 1981 did not contain its own statute of limitations, "the controlling period would ordinarily be the most appropriate one provided by state law." *Id.* at 462 (applying one-year statute of limitation period as set forth in the most analogous statute of limitations under Tennessee law).

In addition to selecting the most analogous state statute, the *Johnson* Court also created a rule of law central to this appeal: when a federal court borrows a state statute of limitations and applies it to a federal statute that lacks its own statute of limitations, the federal court is also required to borrow the state's tolling, revival, and application rules and exceptions:

> Any period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action . . . *In virtually all statutes of limitations the chronological length of the limitations period is interrelated with provisions regarding tolling, revival, and questions of application. In*

> *borrowing a state period of limitation for application to a*
> *federal cause of action, a federal court is relying on the*
> *state's wisdom in setting a limit, and exceptions thereto,*
> *on the prosecution of a closely analogous claim.*

*Id.* at 463-64 (emphasis added).

In *Board of Regents v. Tomanio*, 446 U.S. 478 (1980), which involved a New York chiropractor's challenge to a New York licensing board's denial of her request for a waiver of an exam requirement, the Supreme Court determined that a federal court was required to borrow and apply an analogous state statute of limitation to plaintiff's 42 U.S.C. § 1983 action. *Id.* at 483-84.

*Tomanio* noted that in 42 U.S.C. § 1988, "Congress 'quite clearly instructs [federal courts] to refer to state statutes' when federal law provides no rule of decision for actions brought under § 1983." *Id.* at 484 (*quoting, Robertson v. Wegmann*, 436 U.S. 584, 592-94 (1978)). By its terms, moreover, "§ 1988 authorizes federal courts to disregard an otherwise applicable state rule of law only if the state law is "inconsistent with the Constitution and laws of the United States." *Id.* at 485 (*quoting*, 42 U.S.C. § 1988). *Tomanio* thus borrowed and applied New York CPLR § 214(2), which sets a three-year time limitation for actions "to recover upon a liability, penalty, or forfeiture created or imposed by statute." *Id.* at 484 n. 4 (*quoting*, CPLR § 214(2)).

The *Tomanio* Court reaffirmed the general principle as stated in *Johnson*, that where there is no specifically stated or otherwise relevant statute of limitations for a federal statutory claim, "the controlling period would ordinarily be the most appropriate one provided by state law." *Id.* at 485 (*quoting, Johnson*, 421 U.S. at 462). *Tomanio* also emphasized that "this 'borrowing' logically included rules of tolling[.]" *Id.*

*Tomanio* stated that to resolve the case, it needed to "identify the New York rule of tolling and determine whether that rule is 'inconsistent' with federal law." *Id.* at 485-486.[3] *Tomanio* also restated the tolling rule for "borrowed" state statutes of limitation, as enunciated in *Johnson*, which is central to this appeal:

> In virtually all statutes of limitation *the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application.*

*Id.* at 485-86 (*quoting, Johnson*, 421 U.S. at 463-64).

Prior to 1985, "lower federal courts applied a myriad of different statutes of limitation to § 1983 claims, and the applicable statute in a given case often depended on the extent to which the particular facts underlying the claim could be analogized to a specific state-law cause of action." *King-White v. Humble Indep. Sch. Dist.*, 803

---

[3] *Tomanio* determined that petitioner's § 1983 claim was time-barred because there were no tolling exceptions under New York law that applied to the borrowed New York State statute of limitations, and New York's tolling rule was not inconsistent with the policies underlying § 1983. *Tomanio*, 446 U.S. at 487-88.

F.3d 754, 759 (5th Cir. 2015). Two Supreme Court decisions, *Wilson v. Garcia*, 471 U.S. 261 (1985), and *Owens v. Okure*, 488 U.S. 235 (1989), reflected an effort by the Supreme Court to eliminate the "confusion and inconsistency" that had grown from this "practice of seeking state-law analogies for particular Section 1983 claims." *King-White*, 803 F.3d at 759 (*quoting, Owens*, 488 U.S. at 240). The Court below relied on the rules and rationales of *Wilson* and *Owens* as the foundation for its Opinion and Order dismissing Plaintiff's Title IX claims as time-barred. (A-21-27). This reliance was misplaced.

In *Wilson*, the Supreme Court emphasized that "[a]lmost every Section 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." *Wilson*, 471 U.S. at 272-73. There, where respondent alleged that he was injured by a New Mexico State Police officer who used excessive force to carry out an unlawful arrest, respondent's Section 1983 claim was "arguably analogous" to distinct claims for false arrest, assault and battery, personal injuries, a claim arising under a statute, or governed by a specialized New Mexico statute permitting recovery for a person injured by the torts of its agent. *Id.* at 273. Moreover, *Wilson* noted that claims that have been alleged under § 1983 encompass numerous and diverse topics and subtopics, including: discrimination in employment on the basis of race or the exercise of First Amendment rights, discharge or demotion without procedural due

process, mistreatment of school children, deliberate indifference to the medical needs of prison inmates, and seizure of chattels without sufficient notice or process. *Id.*

The *Wilson* Court recognized the futility of seeking such analogies, and concluded that "*[i]f the choice of the statute of limitation were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue … that two or more periods of limitation should apply to each § 1983 claim.*" *Id.* at 273-74 (emphasis added). The inevitable result of this approach would breed chaos and confusion, in that "different statutes of limitation would be applied to the various § 1983 claims arising in the same state." *Id.* at 274. To avoid this result, *Wilson* determined that all § 1983 claims should be subject to "a simple, broad characterization" as "personal injury" actions for limitations purposes. *Id.* at 272 283 ("§ 1983 actions are best characterized as personal injury actions," thus requiring application of a state's statute of limitations for personal injury actions).

Critically, to the extent *Wilson* modified the rules set forth in *Tomanio*, it did so *only* by narrowing the *choice* of the appropriate state statute of limitations that a district court needs to borrow and apply to a Section 1983 claim.

*Wilson* did not abrogate or modify the rule set forth in *Tomanio* (and, earlier, in *Johnson*) that a federal court which borrows a state statute of limitations must also borrow that state's tolling, revival, and application rules and exceptions, unless they

are inconsistent with federal law. To the contrary, *Wilson affirmed* the *Tomanio* and *Johnson* rule that when borrowing a state statute of limitations, "closely related questions of tolling and application are to be governed by state law." *Wilson*, 471 U.S. at 269 & n. 17. *Wilson* even cited with approval the quote from *Johnson* and *Tomanio* which places questions of "tolling, revival, and . . . application" under the purview of state law. *Id.* (*citing, Johnson*, 421 U.S. at 464; *Tomanio*, 446 U.S. at 484).

While *Wilson* directed courts to apply state personal injury statutes of limitation to § 1983 claims, confusion remained as to the appropriate statute of limitations period for § 1983 claims in states with more than one statute for personal injury actions. *Owens*, 488 U.S. at 241. Some courts applied periods assigned to "certain enumerated intentional torts," while other courts "endorsed the use of the state's residuary statute of limitations" for personal injury actions. *Id.*:

> *Wilson* has not completely eliminated the confusion over the appropriate limitations period for § 1983 claims. In States where one statute of limitations applies to all personal injury claims, *Wilson* supplies a clear answer. Courts considering § 1983 claims in States with multiple statute of limitations for personal injury actions, however, have differed over how to determine *which statute applies*.

*Id.* at 241 (emphasis added).

The *Owens* Court set out to "provide courts with a rule for determining the appropriate personal injury limitations statute that can be applied with ease and predictability in all 50 states." *Id.* at 243. *Owens*, moreover, provided a voluminous, non-exhaustive list of states which have enacted multiple statutes of limitations governing intentional torts and personal injuries. *Id.* at 244 n. 8. *Owens*, to avoid the "chaos and uncertainty" that it had warned against in *Wilson*, thus held that "where state law provides multiple statutes of limitation for personal injury actions, courts considering § 1983 claims should borrow the [state's] general or residual statute for personal injury actions." *Id.* at 249-50.

Notably, in *Owens*, petitioner SUNY police officers defended a Section 1983 claim against them, which alleged excessive force, on the basis that plaintiff's Section 1983 claims were time-barred because the district court could and should have applied New York's one-year statute of limitations for intentional torts (CPLR § 215(3)) *instead of* New York's 3-year residual statute of limitations for personal injury claims (CPLR § 214(5)) to the Section 1983 claims.

*Owens* created a hard-and-fast rule: in a § 1983 action, a district court must *always* borrow a state's general statute of limitations for personal injuries. This compulsory borrowing rule also applies to courts in this circuit which must analyze the timeliness of Title IX claims. *See Curto*, 392 F.3d at 504; *Zimmerman*, 888 F. Supp. 2d at 333; *Twersky*, 993 F. Supp. 2d at 437.

Unlike in this appeal, however, *Owens* did require the district court to make a bright-line choice as to which of two New York statute of limitation should be applied. Likewise, the *Owens* petitioners—unlike the Plaintiff in this case—did not make any argument as to tolling, revival, or questions of application. Accordingly, the *Owens* Court did not address the rule of *Johnson* and *Tomanio* and did not print one word in their decision about tolling or revival.

Four months after the *Owens* decision, in *Hardin v. Straub*, 490 U.S. 536 (1990), the Supreme Court reaffirmed the continuing applicability of the *Tomanio* rule with respect to a federal court's mandate to apply a state's tolling rules when it borrows a state's general statute of limitations for personal injury actions and applies it to a Section 1983 claim.

In *Hardin*, petitioner, who was incarcerated in a Michigan state prison, filed a complaint in 1986 which alleged that prison officials had deprived him of his constitutional rights in 1980 and 1981. It was uncontroverted that the applicable borrowed statute of limitations was Michigan's 3-year statute of limitations for personal injury actions. *Id.* at 540. Petitioner argued that his constitutional claims —which were filed beyond the applicable 3-year statute of limitations—were nevertheless timely because of a Michigan tolling statute (Mich. Comp. Laws Ann. §600.5851(1) (1987)), which tolled the onset of limitations periods for prisoners until one year after their incarceration ended. *Id.* at 540-541. The Sixth Circuit

Court of Appeals had refused to apply the Michigan tolling-during-prison statute to petitioner's claims and affirmed the district court's dismissal of his claims as time-barred. *Id.* at 537.

*Hardin* reversed the lower court's decision and the Sixth Circuit's affirmance, in reliance on the tolling rule for borrowed statutes of limitation set forth in *Tomanio*. *Id.* at 539-40. *Hardin* thus reaffirmed that "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules[.]" *Id.* at 539 (*quoting*, *Tomanio*, 446 U.S. at 484). Accordingly, a state's legislative choices regarding tolling exceptions are "*binding rules of law.*" *Id.* (*quoting*, *Tomanio*, 446 U.S. at 484) (emphasis added).

*Hardin* further held that Michigan's tolling statute was not inconsistent with federal law or policy because Michigan's decision to toll the statute of limitations during the inmate's disability did not frustrate § 1983's compensation goal or hinder its interest in deterrence. *Id.* at 543-544 ("court concluded that the Michigan tolling statute reflects a legislative decision to lessen any such difficulties [inmates may have by filing suit while still incarcerated] by extending the time in which prisoners may seek recovery for constitutional injuries").

Here, Plaintiff argued that the New York CVA is not inconsistent with federal law, as his ability to prosecute this case will "further the Title IX goals of deterring schools with actual knowledge of sex abuse from supporting or excusing such

discriminatory practices, and providing victims of such discrimination with protection and accountability." (Plaintiff's Memo. at 17) (citations omitted). As Defendants never argued in their main brief or reply brief that the revival and tolling rules and exceptions in the New York CVA are inconsistent with Title IX, or any other federal statute, or the U.S. Constitution, Defendants have waived any such argument and may not resurrect it for the first time in this appeal. *See Krabel v. N.Y.C. Dept. of Housing Preserv. & Dev.*, 959 F.2d 395, 401 (2d Cir. 1992) ("if an argument has not been raised before the district court, [the Second Circuit] will not consider it[.]").

By falsely concluding that Plaintiff had asked the Court to apply CPLR § 214-g as *the* borrowed statute of limitation, rather than CPLR § 214(5), the District Court shifted its analysis away from the discrete legal issue presented to it by Plaintiff. The appropriate issue as framed by Plaintiff was: do *Johnson, Tomanio,* [and *Hardin*] mandate that CPLR § 214-g revived Plaintiff's Title IX claims and tolled the applicable borrowed New York statute of limitations (CPLR § 214(5)) for those claims until August 14, 2021? (Plaintiff's Memo. (ECF 83) at 14-17, 19-20, & 24).

An irrelevant and unsolicited question, manufactured by the District Court, distorted the issue raised by Plaintiff and permitted the Court to invoke the entirely inapposite rules of *Wilson* and *Owens* to answer a question that was not even before it: was the New York CVA *the* statute of limitations which the District Court needed

to borrow and apply to Plaintiff's Title IX claims *in place and stead* of CPLR §

214(5), New York's residual three-year statute of limitations for personal injury

actions?

**III.  ALL OF THE CASES IN THIS CIRCUIT WHICH HAVE DETERMINED THAT PLAINTIFFS' *PRIMA FACIE* UNTIMELY SECTION 1983 OR TITLE IX CLAIMS COULD NOT BE REVIVED BY THE NEW YORK CVA DID NOT INVOLVE A PROPER ANALYSIS AND APPLICATION OF THE "REVIVAL" AND "TOLLING" IMPACT OF CPLR § 214-g**

In *Boyle v. N. Salem Cent. Sch. Dist.*, 2020 U.S. Dist. LEXIS 82504 (SDNY

2020), the Southern District of New York Court examined the impact of the New

York CVA on the timeliness of a plaintiff's Section 1983 claims based on allegations

that his grade school guidance counselor had sexually molested him.  Defendants, a

school district and educational services company, moved to dismiss plaintiff's

Section 1983 claim as untimely. *Id.* at *2-3.

In opposition to defendants' motion, plaintiff: (1) did not argue or

acknowledge that the court needed to borrow and apply CPLR § 214(5) as the

governing statute of limitations for his Section 1983 claims; (2) made no mention of

CPLR § 214(5); (3) did not argue that CPLR § 214-g revived plaintiff's Section 1983

claims and tolled the running of the applicable statute of limitations until August 14,

2021; and (4) did not cite *Johnson, Tomanio, Hardin,* and/or any other legal

authority in support of the ironclad rule that when a federal court borrows a state's

statute of limitations, it must also borrow the state's coordinate tolling and revival

rules and exceptions, as well as questions of application.

The *Boyle* plaintiff exclusively argued instead that:

> *[T]he Child Victims Act* ("CVA"), S.2440/CPLR § 214-G,
> *impacts analysis of when Plaintiff's § 1983 claim accrued.*
> The enactment of the CVA was a legislative
> acknowledgment that minor victims of historic sexual
> abuse may well have been unaware, at the time of the
> abuse and possibly for many years thereafter, that they had
> been victimized not only by a person but by an institution
> or institutions which had placed that person in a positon of
> authority over them. Recognizing this aspect of historic
> sexual abuse, the CVA was intended to allow these minor
> victims a retrospective opportunity to timely "become
> aware of" the wrong from which they were suffering.
> Thus, it is only after the CVA became law that Plaintiff,
> like so many others similarly situated, became aware he
> was "suffering from a wrong" perpetrated by the
> institutions that had placed [his abuser] in a position of
> authority over him, "for which damages may be recovered
> in a civil action." Consequently, *Plaintiff's § 1983 claim
> accrued no earlier than the signing into law of the CVA on
> February 14, 2019.* Since Plaintiff's claim has been
> commenced timely pursuant to the CVA, the Court should
> allow the claim to proceed.

(*Boyle,* Case No. 7:19-CV-08577-VB, Plaintiff's Opposition Brief (Doc. No. 39) at

14) (emphasis added) (A-121)).

The plaintiff in *Boyle*, by focusing *exclusively* on how CPLR § 214-g

impacted the date of accrual, argued that CPLR § 214-g was *the* controlling statute

of limitations for his Section 1983 claims. *See CTS Corp. v. Waldburger,* 573 U.S.

1, 7 (2014) ("[A] statute of limitations creates a time limit for suing in a civil case,

*based on the date when the claims accrued.*" (*quoting, Black's Law Dictionary* 1546 (9th ed. 2009) (emphasis added)).

Likewise, the *Boyle* plaintiff did not make the central argument made by Plaintiff in this case—that CPLR § 214-g is a revival and tolling provision that revived Plaintiff's federal statutory claims and tolled the running of the applicable borrowed statute of limitations—CPLR §214(5)—until August 14, 2021. *See* Plaintiff's Memo. at 14-17, 19-20, & 24; *see also, CTS Corp.*, 573 U.S. at 9 (explaining that tolling "pauses the running of, or tolls, a statute of limitations.").[4]

Judge Bricetti thus concluded that "plaintiff argues the court must look to N.Y. CPLR § 214-g *to identify the relevant statute of limitations applicable* to plaintiff's Section 1983 claim." *Boyle,* 2020 U.S. Dist. LEXIS 82504 at *7 (emphasis added). As the *Boyle* plaintiff focused his New York CVA argument exclusively on accrual, rather than revival and tolling, Judge Bricetti was compelled to make a binary choice as to whether to apply CPLR § 214(5) *or* CPLR § 214-g to plaintiff's § 1983 claim. So constrained by the arguments of the parties before him, he correctly concluded that "in New York, the applicable general or residual statute of limitations applicable

---

[4] The only "tolling" argument made by the plaintiff in *Boyle* was that the statute of limitations was tolled pursuant to the New York doctrine of equitable estoppel. (A-121-122). After reviewing the New York law on equitable estoppel, *Boyle* concluded that plaintiff had failed to establish that he was entitled to invoke equitable estoppel. *Boyle*, 2020 U.S. Dist. LEXIS at *8-10.

to plaintiff's Section 1983 claim is three years [CPLR § 214(5)]." *Id.* at *8 (*citing, inter alia, Owens*, 488 U.S. at 249-50).

In *Boyle*, Judge Bricetti properly analyzed and characterized the arguments presented to the court by the parties' counsel. *Boyle*, nonetheless, is bad law because—through no fault of Judge Bricetti—the court never even considered CPLR § 214-g as a potential revival and tolling provision, rather than as a proposed alternative statute of limitations that it needed to borrow and apply to plaintiff's Section 1983 claims, and never considered whether the tolling and revival rules as set forth in *Johnson, Tomanio,* and *Hardin*, were at all applicable as legislatively mandated exceptions to claims governed by CPLR § 214(5).

*Boyle*, unfortunately, has been relied upon by several other federal courts that examined the impact of the New York CVA and CPLR § 214-g on the timeliness of plaintiffs' Section 1983 and/or Title IX federal claims. Like a bad game of legal "telephone," each court wading into this controversy—including the Court below—has viewed *Boyle* exclusively through an either-or choice of law lens and thus further distorted and/or ignored the actual applicable revival and tolling rules that should be controlling.

In *Doe v. NYS Office of Children & Family Servs.*, 2021 U.S. Dist. LEXIS 125965 (NDNY 2021), the Northern District of New York Court, relying upon *Boyle*, rejected plaintiffs' attempt to invoke CPLR § 214-g to revive plaintiff's

Section 1983 claims which were based on sex abuse. There, plaintiff argued that CPLR § 214-g was a "revival statute" that rendered her Section 1983 claims timely, and that "[t]he CVA also amended the CPLR § 208, the toll for infancy, to provide a new subdivision (b) that a civil claim for damages by a person who was sexually abused as a child under the age of 18 may be filed by the date of plaintiff's 55th birthday." (*Doe*, Case No. 1:20-CV-01195-BKS-CFH (Doc. No. 21-2) at 20).

The *Doe* plaintiffs argued that the Court "should not adopt the rationale underlying the decision in *Boyle*," but "failed to identify any error in the *Boyle* Court's analysis or otherwise distinguish the applicable facts and arguments." *Doyle*, 2021 U.S. Dist. LEXIS 125965 at *19.

Like the plaintiff in *Boyle*, the *Doe* plaintiffs: (1) did not argue or acknowledge that the Court needed to borrow and apply CPLR § 214(5) as the governing statute of limitations for her Section 1983 claims; (2) made no mention of CPLR § 214(5); (3) failed to argue that CPLR § 214-g was a revival and tolling provision that tolled the running of the applicable statutes of limitation (CPLR § 214(5)) until August 14, 2021; and (4) failed to cite *Johnson, Tomiano,* or *Hardin*, or any other authority, in support of a tolling argument based on New York's new revival and tolling provisions.

As such, the *Doe* Court—like the *Boyle* Court—reasonably construed plaintiff's argument as a request for the court to select CPLR § 214-g, rather than

CPLR § 214(5), as the borrowed New York statute of limitations to be applied to plaintiff's Section 1983 claims. *Doe* thus concluded that, pursuant to the Supreme Court's instruction in *Owens*, it was not permitted to attempt to discern the most analogous state statute of limitations but was, rather, obligated to "'borrow the general or residual statute for personal injury actions,' which in New York is the three-year statute of limitations contained in N.Y. C.P.L.R. § 214(5)." *Doe*, 2021 U.S. Dist. LEXIS 125965 at *17. *There is absolutely no daylight between the Doe Court's conclusion as to <u>which</u> statute of limitations applied to plaintiff's federal claims and Plaintiff's argument to the Court below on that precise issue.* (*See* Plaintiff's Memo. (ECF 83) at 14-17, 19-20, & 24).

The *Doe* Court limited its tolling discussion, based on plaintiffs' narrow argument, to an analysis of CPLR § 208(b), which was added to the CPLR in 2019 as part of the New York CVA. (*See* SPA-2). CPLR § 208(b) amended CPLR § 208, which contains New York's tolling provisions for infancy and insanity, to permit a person to bring a civil claim based on a sexual offense against a minor until the victim turns fifty-five. (CPLR § 208(b)). The *Doe* Court rejected plaintiff's tolling argument by concluding that CPLR § 208(b) constitutes a "statute of limitations provision" rather than "a tolling provision." *Id.* at *18-19. The *Doe* Court did not engage in any parallel analysis of whether CPLR § 214-g is a "tolling provision"— which "pauses the running of, or tolls, a statute of limitations," *see CTS Corp.*, 573

U.S. at 9, or a "statute of limitations provision"—by which the Legislature "create[d] a time limit for suing in a civil case, based on the date when the claim accrued." *See id.* at 7.

As a threshold matter, CPLR § 208(b) had no bearing on the issue before the *Doe* Court as it is a prospective statute that applies *only* to events that occur after the date of the CVA's enactment (February 14, 2019). As the *Doe* plaintiffs alleged that they were sexually assaulted in 2014 through 2018, *Doe*, 2021 U.S. Dist. LEXIS 125965 at *2-6, CPLR § 208(b) was clearly inapplicable on its face. Neither counsel for the parties, nor the *Doe* Court, however, raised the critical distinction between the controlling provision of the CVA that applied to events that occurred prior to the CVA's enactment (CPLR § 214-g) and the inapposite provision of the CVA that applied to events that occurred after the CVA's enactment (CPLR § 208(b)).

Plaintiff did not invoke CPLR § 208(b) *at all* with respect to the timeliness issue because he alleged that Defendants' wrongful acts occurred in 2008 and 2009, long before the enactment of the New York CVA, thereby rendering CPLR § 208(b) meaningless to his claims. The District Court, nonetheless, analyzed Plaintiff's revival and tolling argument as if Plaintiff—like the plaintiff in *Doe*—had invoked and relied upon CPLR § 208(b).

In *Coe v. Regan*, 2022 U.S. Dist. LEXIS 23021 (EDNY 2022), likewise, plaintiff filed Title IX and Section 1983 claims against her former high school based on alleged sexual abuse by her basketball coach from 1997 through 1999. Plaintiff sought to revive her *prima facie* untimely federal claims pursuant to CPLR § 214-g.

Although the *Coe* plaintiff argued that CPLR § 214-g "has 'revived' the statute of limitations period such that the period had not expired for Plaintiff to have brought on her action," (*Coe*, Case No. 2:19-CV-05327-ENV-VMS, Plaintiff's Memo. of Law in Opp. to Defendants' Motion to Dismiss Complaint (Doc. No. 39) at 2), the *Coe* plaintiff: (1) did not cite or acknowledge CPLR § 214(5) as the applicable statute of limitations that needed to be borrowed and applied to her Title IX and Section 1983 claims; (2) did not cite *Johnson, Tomanio,* or *Hardin* in support of any argument to use CPLR § 214-g to revive Plaintiff's Title IX and Section 1983 claims and toll the running of CPLR § 214(5); and (3) in a self-inflicted *coup de grace*, *wrongly argued* that CPLR § 214-g was "*the most appropriate or analogous state statute of limitations*" that applied to her Title IX claims. *Id.* at 4 (citations omitted) (emphasis added).

*Coe*, like *Boyle, Doe,* and the District Court in this case, concluded that the plaintiff had requested that the court apply CPLR § 214-g as the applicable borrowed statute of limitations for her federal claims in place and stead of CPLR § 214(5). *Coe*, 2022 U.S. Dist. LEXIS 23021 at *9-10 (plaintiff's argument that her federal

claims fell "within a revived statute of limitations" that was "most analogous" to her federal claims, i.e., CPLR § 214-g, "is at loggerheads with *Owens*.").

Accordingly, *Coe* concluded that plaintiff had not persuaded the court to deviate from the *Owens* rule: the applicable statute of limitations that applied to her federal claims was CPLR § 214(5). *Id.* at *11-12. Again, as in *Boyle* and *Doe*, there is absolutely no distinction between *Coe's* conclusion as to which statute of limitations the district court needed to borrow and apply to plaintiff's federal claims—CPLR § 214(5)—and the Plaintiff's argument on that very point to the Court below in this case. (Plaintiff's Memo. (ECF 83) at 14-17, 19-20, & 24).

Unlike in this case, however, the *Coe* plaintiff did not make a well-developed argument that, pursuant to *Johnson, Tomanio,* and *Hardin*, the court was required to borrow New York's revival rule, CPLR § 214-g, and apply it to toll the running of the applicable statute of limitations (CPLR § 214(5)). Accordingly, the *Coe* Court— presented with a binary choice of whether to "borrow" CPLR § 214(5) *or* the New York CVA to plaintiff's federal claims—chose to borrow CPLR § 214(5) and then dismissed plaintiff's Title IX and Section 1983 claims as time-barred. *Id.* at *12.

Here, the Defendants ignored that CPLR § 208(b) was prospective only, and not retroactive, and, in their reply brief, mangled and distorted Plaintiff's CPLR § 214-g tolling argument by invoking the clearly inapplicable CPLR § 208(b)—which Plaintiff had not mentioned or relied upon—to confuse the issue:

Plaintiff's characterization of the CVA as a simple tolling mechanism is incorrect. The CVA is a specialized state-created statute which opens and extends the statute of limitations for claims related specifically to childhood sexual abuse which fall within a sexual offense as defined by New York's penal code—and revives previous time-barred claims. *The CVA not only provides this look-back window for state claims, but extends the time which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years of age. See CPLR § 208(b). Under the guise of labeling the CVA a tolling statute, Plaintiff is actually asking that this Court apply the specialized statute of limitations and revival provision derived from the CVA to Title IX claims, which directly conflicts with the U.S. Supreme Court's decision and ruling in Owens[.]*

(Defendant's Reply Memo. (ECF 84) at 6-7) (emphasis added).

Defendants falsely misrepresented to the Court below that Plaintiff was "actually asking" that the Court apply CPLR § 208(b)—which it described as a "specialized statute of limitations"—to Plaintiff's Title IX claims. Plaintiff, aware that CPLR § 208(b) applied prospectively but *not* retroactively, made no such request and did not even reference CPLR § 208(b) in his opposition brief. Not once. Defendants' characterization of Plaintiff's tolling argument based on the CVA, which accentuated CPLR § 208(b) and deemphasized CPLR § 214-g, was patently false and intended to deceive the Court below. And it did.

Although Plaintiff never made any CPLR § 208(b) tolling argument, because the District Court denied Plaintiff's request for oral argument on the motion, Defendants' reply brief stood as the last unrebutted word on the issue. The District

Court, in dismissing Plaintiff's Title IX claims as time-barred, took Defendants' bait and adopted their patently false argument:

> Plaintiff strains to present the CVA as a simple tolling rule that must be applied here by virtue of New York's statutory scheme. (P's Opp. at 15-17). But the CVA is more than a generally applicable tolling provision: *it is a revival statute that creates a unique statute of limitations for a specific subcategory of cases.*

(A-26-27) (emphasis added) (*citing, inter alia, Doe v. NYS Off. of Child & Fam. Servs.*, No. 20-CV-1195, 2021 WL 2826457, at *7-8 (NDNY 2021) ([and stating that the *Doe* Court had] "conclud[ed] that *the CVA created new statutes of limitations, not new tolling provisions*, and applying the residual three-year statute of limitations to a § 1983 claim.") (emphasis added).

The District Court's conclusion on this key issue falsely assumed that Plaintiff had argued that CPLR § 208(b) was *the* statute of limitation that the Court needed to borrow and apply to his Title IX claims. The plaintiff in *Doe* had made that precise argument. *Doe*, 2021 U.S. Dist. LEXIS 125965 at *18. *But Plaintiff in this case categorically did not*. The Defendants nevertheless told the Court below that Plaintiff, too, was "actually asking" to invoke CPLR § 208(b) as the controlling statute of limitations. (Defendants' Reply Memo. (ECF 84) at 6-7). Defendants' representation on this critical point was categorically false and yet the District Court's case-ending determination assumed that it was true.

The two federal cases cited by Defendants in their reply brief which were cited and relied upon by the District Court (*see* A-23-24) also required the court to make a binary choice between a specialized statute of limitations for sex abuse cases *or* a state's general statute of limitations for personal injury actions. *See King-White*, 803 F.3d at 758-60 (in Title IX claim involving child sex abuse, Fifth Circuit was faced with binary choice of applying Texas's two-year general statute of limitations for personal injuries, *or* Texas's five-year statute of limitations for causes of action stemming from sexual assault); *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) (in Section 1983 claim involving allegations of childhood sexual abuse, Ninth Circuit was presented with binary, either-or choice of applying Oregon's two-year general statute of limitations for personal injuries (Or. Rev. Stat. § 12.110) *or* Oregon's specialized statute for child sex abuse victims, which provides that a victim of child sex abuse must commence an action "before the person reaches age 40") (Or. Rev. Stat. § 12.117(1)).

If Plaintiff had relied upon CPLR § 208(b) as the basis of his Title IX timeliness argument, the District's Court's timeliness analysis would have dovetailed with the *Owens* and *Wilson* rule, as applied in both *King-White* and *Bonneau*, and would have been sound. *But Plaintiff did not do this because he could not reasonably argue that such a prospective statute could possibly apply to his Title IX claims which accrued in 2009, ten years prior to the enactment of CPLR § 208(b).*

As such, the choice of law rationales deployed in *King-White* and *Bonneau*, as well as the *Owens* and *Wilson* rule, were entirely irrelevant to the revival and tolling issue actually presented to the District Court. The District Court's timeliness conclusion, predicated on inapplicable rules and rationales, was thus decidedly unsound and contrary to well-settled federal law.

## IV. THE DISTRICT COURT ERRED IN CONCLUDING THAT CPLR § 214-g WAS A "SPECIALIZED STATUTE OF LIMITATIONS" RATHER THAN A "REVIVAL" AND "TOLLING" PROVISION

By sinking its analytical hook into Defendants' CPLR § 208(b) red herring, the District Court failed to conduct any real analysis of whether CPLR § 214-g—the actual statute invoked by Plaintiff on the timeliness issue—was a "tolling provision" that triggered the tolling and revival rules of *Tomanio*, *Johnson*, and *Hardin*, or a "specialized statute of limitations" subject to the *Wilson* and *Owens* rule which forbids a court from choosing and applying any statute of limitations other than a state's general personal injury statute of limitations to a federal statutory claim without its own statute of limitations.

CPLR § 214-g provides in pertinent part that every civil claim involving the sexual abuse of a minor child, "which is barred as of the effective date of this section *because the applicable statute of limitations has expired* . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later

than two years and six months after, the effective date of this section." (CPLR §
214-g) (emphasis added). (SPA-7).

CPLR § 208(b), in contrast, which "allows a plaintiff whose sexual abuse
claim accrued while a minor to sue until [she turns] fifty-five," *Doe*, 2021 U.S. Dist.
LEXIS 125965 at *19, *prospectively* created a unique statute of limitations for a
specific subcategory of cases (sex abuse claims for minors) and thus may fairly be
characterized as a "specialized statute of limitations" provision rather than a "tolling
provision." *Id.* at *18.

CPLR § 214-g, however, which is the *only* statute Plaintiff raised in his Title
IX timeliness argument, is a different animal altogether. Contrary to the District
Court's conclusion, CPLR § 214-g, which on its face applies to various and different
sex abuse-related claims in which "the applicable statute of limitations has expired,"
most certainly did not "create a unique statute of limitations for a specific
subcategory of cases." (*See* A-26-27) (*see also*, *CTS Corp.*, 573 U.S. at 7-9).

CPLR § 214-g, which permitted a wide range of civil claims related to sex
abuse to be filed within two and a half years of the CVA's enactment, revived and
then paused the running of, or tolled, numerous "applicable" statutes of limitation
for a specific period of time. As the Supreme Court illuminates, CPLR § 214-g is
thus a revival and tolling provision and exclusively a revival and tolling provision.
*See CTS Corp.*, 573 U.S. at 9.

As further explained by this Court, when—as with CPLR § 214-g—a new statute prevents an applicable statute of limitations from running until a specified time after the occurrence of a certain event, the new statute "does not alter the date on which plaintiffs' claims accrued" and is thus an "equitable tolling provision." *See M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 223 (2d Cir. 2003) (*citing, Tomanio*, 446 U.S. at 484-86).

Numerous New York courts have specifically affirmed that CPLR § 214-g is a revival and tolling statute. *See e.g.*, *Werner v. Diocese of Rockville Ctr.*, 2020 N.Y. Misc. LEXIS 2003, *16-17 (Sup. Ct. Nassau Cty. 2020) (in enacting CPLR § 214-g, "[t]he Legislature expressly revived "every" claim or cause of action brought against a "party" so long as the claim alleges intentional or negligent conduct by a "person" causing injury as a result of specific child sexual abuse offenses."); *Doe v. Baram*, 2021 U.S. Dist. LEXIS 199615, *10 (SDNY 2021) ("even if the statute of limitations had expired in *Doe's* claims, it would be revived under the [CVA, provided that a complaint] "was filed within [CPLR § 214-g's] "revival window."); *PC-41 Doe v. Poly Prep Country Day Sch.*, 2021 U.S. Dist. LEXIS 181254, *7 (EDNY 2021) (characterizing CPLR § 214-g as a "claim-revival statute" and determining that the CVA was constitutional); *Doe v. Diocese of Rockville Ctr.*, 2020 N.Y. Misc. LEXIS 1964, *2 (Sup. Ct. Nassau Cty. 2020) (explaining that "[t]he legislation [CVA] was primarily intended to revive civil claims by survivors of

childhood sexual abuse that were time-barred *under the existing statute of limitations* [*citing*, CPLR § 214-g], and to provide a more generous statute of limitations for such claims *in the future* [*citing*, CPLR § 208(b)]) (emphasis added) (*citing*, *McKinney's CPLR 214-g Practice Commentaries*, by Vincent Alexander).

CPLR § 214-g is not a "specialized statute of limitations" provision. No New York state or federal court, other than the District Court, has ever determined that it is. To the contrary, it is *on its face* a revival and tolling provision. *See M.D.*, 334 F.3d at 223 (holding that the statute at issue, which created a two-year limitations period that did not begin to run until a school board provided plaintiffs with notice of procedural safeguards, was a "tolling provision.").

By conflating the entirely irrelevant CPLR § 208(b) with Plaintiff's actual timeliness argument, and thus improperly characterizing CPLR § 214-g as a "specialized statute of limitations" rather than a "revival" and "tolling" statute, the District Court improperly ignored the compulsory rule established by the Supreme Court in *Johnson*, *Tomanio*, *Hardin*, and *Wilson*: in borrowing a state period of limitation application to a federal cause of action, a district court *must* borrow a state's provisions regarding "tolling, revival, and questions of application." *See Johnson*, 421 U.S. at 463-64; *Tomanio*, 446 U.S. at 484; *Hardin*, 490 U.S. at 539-40; *Wilson*, 471 U.S. at 269 & n. 17.

Here, where Defendants did not even argue that CPLR § 214-g was inconsistent with Title IX or any other federal law, the District Court should have recognized that CPLR § 214-g "reflects a legislative decision" to lessen difficulties sexually abused minors face in bringing suit against culpable parties "by extending the time which [abuse victims] may seek recovery for [their] injuries." *See Hardin*, 490 U.S. at 543-44.

Indeed, in bemoaning the difficulties faced by child sex abuse victims in obtaining justice, Court of Appeals Judge Carmen Ciparick stated in 2006 that for such victims to be able to obtain judicial relief, the Legislature needed to carve out an exception to New York's existing statute of limitations laws: "Any *exception* to be made to allow these types of claims to proceed *outside of the applicable statute of limitations* would be for the Legislature, as other states have done." *Zumpano v. Quinn*, 6 N.Y.3d 666, 677 (2006) (emphasis added).

The Assembly Committee Report (Sponsor's Memorandum) for the New York CVA, stated clearly that CPLR § 214-g manifests precisely such a "legislative decision" to create such an "exception" and revive and toll existing statutes of limitation for child sex abuse claims:

> This bill represents just such a legislative exception [of the type contemplated by Judge Ciparick in *Zumpano*]. The bill is a legislative acknowledgment of the unique character of sex crimes against children, which can have a multitude of effects upon victims, including being justifiably delayed in otherwise timely taking action

against their abusers or those who facilitated their abuse. The bill sets up a specific framework for the revival of actions in which the courthouse door has been closed to victims[.]

(2019 New York Assembly Bill No. 2683; 2019 Legis. Bill Hist. NY A.B. 2683)

(*quoted by Metz v. St. Hugh of Lincoln Roman Catholic Church*, 2020 N.Y. Misc. LEXIS 12492, *14-15 (Sup. Ct. Nassau Cty. 2020)). *See also*, *Asbestos Claimants v. U.S. Lines Reorganization Trust*, 318 F.3d 432, 436 (2d Cir. 2003) (Second Circuit defined equitable tolling rules as those that allow a court "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order to prevent inequity.").

The District Court should have concluded that CPLR § 214-g was a recognized statutory "exception" to various New York statutes of limitation related to sex abuse causes of action of minors (including New York's general statute of limitations for personal injury actions (CPLR § 214(5)) and should have invoked CPLR § 214-g to revive Plaintiff's Title IX claims and render them timely.

**V. CONTRARY TO THE DISTRICT COURT'S CHOICE OF LAW CONCLUSION, IN ANALYZING WHETHER A STATUTE HAS BEEN TOLLED, A DISTRICT COURT IS NOT MERELY PERMITTED, BUT MANDATED, TO MAKE DETERMINATIONS BASED ON THE "PARTICULAR FACTS" OR "PRECISE LEGAL THEORIES" OF A PLAINTIFF'S TOLLING CLAIMS**

Plaintiff argued to the Court below that in *Twersky*, the Southern District of New York Court "recognized that when 'borrowing' (N.Y. CPLR § 214(5)) for Title IX claims which alleged that plaintiffs were sexually abused as minors during their high school years, the plaintiffs' claims were subject to New York's tolling statute for infancy [N.Y. CPLR § 208]." (Plaintiff's Memo. (ECF 83) at 16). In trying to rationalize why a district court was obligated to apply New York's tolling rule for infancy to a plaintiff's Title IX claims but could *not* apply New York's tolling rule for child sexual abuse victims, the District Court *again* relied upon the false premise that underpins its timeliness decision: Plaintiff was actually asking the District Court to "select" the New York CVA, rather than CPLR § 214(5), as the statute of limitations to be applied to his Title IX claims.

> [U]nlike the generally applicable tolling rule applied in *Twersky*—which tolls the statute of limitations until a claimant reaches the age of majority, *see Twersky*, 579 F. App'x at 9—the CVA would *only apply to Title IX claims with a particular set of facts*. That is, application of the CVA would "depend upon the particular facts or the precise legal theory of each claim," *Wilson*, 471 U.S. at 273-74, and would introduce exactly the sort of "chaos and uncertainty" that *Wilson* and *Owens* sought to avoid, *Owens*, 488 U.S. at 243 (*citing Wilson*, 471 U.S. at 275).

(A-27) (emphasis added).

Both *Wilson* and *Owens* warned against creating "chaos and uncertainty" by giving district court's broad discretion in selecting the most analogous state statute of limitations for a plaintiff's federal claims which lack their own statute of limitations from among a wide array of possible alternatives. *Wilson* and *Owens* put an end to such potential confusion by setting forth the mandatory rule that a district court must borrow the state's general personal injury statute of limitations. *Wilson* and *Owens did not*, however, instruct district courts to refrain from analyzing "particular facts" or various "precise legal theories" in connection with a district court's parallel duties to borrow a state's general personal injury statute of limitations *and* that state's related "provisions regarding tolling, revival, and questions of application." *Tomanio*, 446 U.S. at 485-86; *Johnson*, 421 U.S. at 463-64. To the contrary, *Wilson* quoted the *Tomanio* and *Johnson* rule, *Wilson*, 471 U.S. at 269 & n. 17, and expressly affirmed that state law governs "closely related questions of tolling and application[.]" *Id.* at 269.

The District Court's construction of the issue, along with the inchoate and therefore misleading analysis in *Boyle, Doe,* and *Coe*, creates much confusion where none should exist. A state's legislative choices regarding tolling exceptions are "binding rules of law." *Tomanio*, 446 U.S. at 484; *Hardin*, 490 U.S. at 539. This is true whether a state creates a tolling rule for infancy, insanity, incarceration, or

victims of childhood sexual abuse. The District Court, *Boyle*, *Doe*, and *Coe*, collectively serve to abrogate the rule on tolling and revival as set forth in *Johnson, Tomanio,* and *Hardin*. No such abrogation is warranted as a matter of law, equity, or public policy.

The District Court's mandate barring a court from determining "the particular facts" or the "precise legal theory of each claim" when deciding whether to apply a tolling provision to a "borrowed" state statute of limitations for personal injuries, is preposterous and unworkable. The District Court's formulation, indeed, is contrary to an extensive body of law which holds that when a federal court needs to determine whether to apply a state tolling provision to a *prima facie* untimely federal claim, it *must* engage in a detailed and often complex analysis of the "particular facts" and "legal theories" that are being invoked by a *prima facie* untimely plaintiff to trigger the alleged toll.

The Supreme Court has emphasized that a district court must "refer[ ] to state law for tolling rules," *Wallace v. Kato*, 549 U.S. 384, 394 (2007). Thus when borrowing a general personal injury statute of limitations for a federal claim, a district court must apply the state's [common law] rule of equitable tolling, rather than the federal rule of equitable tolling." *Id.* at 394-95.

New York federal courts, when analyzing the timeliness of Title IX or Section 1983 claims, thus *must* look to the New York tolling doctrine of equitable estoppel to determine whether the particular set of facts pleaded in the complaint fits within that precise and complex legal theory. Many courts in this circuit have conducted a rigorous analysis of facts and law before determining whether New York's equitable estoppel toll applies to Title IX claims. *See, e.g., Zimmerman*, 888 F. Supp. 2d at 334-36 & 340 (Court determined that plaintiffs had successfully invoked equitable estoppel (pursuant to a fraudulent concealment theory) to toll running of applicable statute of limitations for plaintiffs' Title IX claims, i.e., CPLR § 214(5), where plaintiffs sufficiently pleaded that school had engaged in an "affirmative course of conduct to deceive plaintiffs into believing they had no cause of action" against school that had failed to adequately supervise or fire a long-time football coach whom school officials knew was a serial child molester); *Twersky*, 993 F. Supp. 2d at 442 (court engaged in a detailed analysis of New York doctrine of equitable estoppel and determined that it did not apply because, *inter alia*, plaintiffs alleged misrepresentations to the community-at-large, rather than to the plaintiffs themselves); *Boyle*, 2020 U.S. Dist. LEXIS 62504 at *8-10 (court engaged in detailed analysis as to whether New York doctrine of equitable estoppel tolled plaintiff's Section 1983 claims, noting that "[t]o qualify for equitable tolling, a plaintiff must demonstrate that he acted with reasonable diligence in pursuing his

claim, but that some extraordinary circumstances, such as fraudulent concealment, prevented him from timely filing suit."); *see also, Bisson v. Martin Luther King Jr. Health Clinic*, 399 Fed. Appx. 655, 656 (2d Cir. 2010) (after affirming district court's finding that plaintiff's claim was *prima facie* untimely, this Court "remanded to allow the Plaintiff to raise the [state-law] doctrine of equitable estoppel before the District Court.").

In *Keitt v. City of New York*, 2010 U.S. Dist. LEXIS 91857, *22-23 (SDNY 2010), Judge Freeman examined, *inter alia*, "statutory tolling" under CPLR § 208 as applied to a Section 1983 claim (which borrowed CPLR § 214(5)) based on an alleged false arrest and racial profiling. *Keitt* examined at length the statutory rules for tolling by reason of insanity (CPLR § 208). *Keitt* reviewed the legislative history of CPLR § 208 and concluded that "the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all-inability to function in society." *Id.* at 23 (*citing, McCarthy v. Volkswagen of Am.*, 55 N.Y.2d 543, 548 (1982)).

*Keitt* also noted that "[a] plaintiff seeking to obtain the benefit of [CPLR § 208] must not only show that he suffered from such an 'inability to function' in society, "but also that his disability was continuous during the relevant period." *Id.* (*citing, De Los Santos v. Fingerson*, 1998 U.S. Dist. LEXIS 16657, *10 (SDNY 1998)). Moreover, where a plaintiff's mental condition presents a "complex factual

issue," it may even be necessary "for the Court to conduct an evidentiary hearing to determine if a plaintiff's mental state during the statutory period meets the high standard for insanity under Section 208[.]" *Id.* at *24 (*quoting, Carter v. Doe*, 2006 U.S. Dist. LEXIS 51856, *7 (SDNY 2006)).

As *Zimmerman*, *Twersky* and *Keitt* illustrate, in determining whether to toll the borrowed statute of limitations—CPLR §214(5)—a court is often mandated to carefully analyze complex sets of "particular facts" and complicated "legal theories" which support or don't support the proposed toll.

There is no reason why a federal court should treat CPLR § 214-g any differently. The *Wilson* and *Owens* rule—which governs *only* a district court's threshold choice of *which* statute of limitations to apply to a federal claim without its own statute of limitations—does not and should not interfere with a court's application of a state's "binding" coordinate revival and tolling provisions. *See Hardin*, 490 U.S. at 539 (*quoting, Tomanio*, 446 U.S. at 484)

In the wake of the New York federal courts' analytically imprecise decisions in *Boyle, Doe,* and *Coe*, the District Court has now further stretched *Wilson* to bar a court from borrowing a state's coordinate revival and tolling rules and exceptions under the extraordinarily weak rationale that to do so would require a court to examine a "particular set of facts" and "precise legal theory." This is a baseless argument which is antithetical to the Supreme Court's pinpoint instruction on tolling

and revival as set forth in *Johnson*, *Tomanio, Hardin*, and *Wilson*, as well as decades of Second Circuit jurisprudence on various tolling issues.

*Boyle, Doe, Coe,* and the District Court all wildly missed the mark in their analysis of this issue. But the first three courts were at least somewhat constrained in their decisions because counsel for the plaintiffs in those cases all requested that the courts make a binary choice and select the New York CVA, rather than CPLR § 214(5), as the most analogous statute of limitations to be applied. Here, though, the District Court has no similar excuse for its faulty analysis because Plaintiff presented the implicated issue to the Court properly. *See* Plaintiff's Memo. (ECF 83) at 14-17, 19-20, & 24. The District Court nevertheless shoehorned its timeliness determination under a *Wilson* and *Owens* framework by concluding that Plaintiff had made one argument to it, when, in fact, Plaintiff had advanced the precise opposite argument.

The distortion of the *Wilson* and *Owens* rule has extended into the New York State courts, as in *BL Doe 3 v. Female Academy of the Sacred Heart*, 199 A.D.3d 1419, 1421-22 (4th Dept. 2021), the Appellate Division, Fourth Department relied on *Wilson* and *Owens* and reversed a soundly reasoned decision by Justice Chimes of the Monroe County Supreme Court which applied CPLR § 214-g to toll CPLR § 214(5) for plaintiff's sex abuse-related Title IX claims which were asserted after

passage of the New York CVA.[5]  There, the Fourth Department invoked the same feeble "particular facts" or "precise legal theory" rationale invoked by the District Court in this case.  *Id.* at 1422 (noting that "courts have applied the rationale of *Wilson* and *Owens* to other federal civil rights claims").  For the same reasons as argued in this appeal, that rationale was baseless and illogical—yet its invocation led the Fourth Department to arrive at an incorrect conclusion.

The longstanding *Johnson, Tomanio,* and *Hardin* mandatory rule should not be so easily swept away on the back of a legal fiction.  *Wilson* and *Owens* are not relevant unless a district court is compelled to make a binary choice as to which of two competing statutes of limitation to apply to a naked federal claim.  Here, Plaintiff did not ask the Court below to make such a choice.  But the District Court insisted that he did—and based its entire decision on that demonstrably false premise.

---

[5] *See Doe v. Female Acad. of the Sacred Heart,* 2020 N.Y. Misc. LEXIS 18220, *8-9 (Sup. Ct. Monroe Cty. 2020).  Justice Chimes's straightforward analysis was on the mark:

> With respect to claims brought under Title IX, "[t]he court borrows the relevant state statute of limitations as to pendent state claims, and borrowed state statute of limitations are governed by its own rules of applications, tolling and revival, absent a conflicting federal policy underlying the cause of action" *Gardner v. St. Bonaventure Univ., 171 F. Supp. 2d 118, 128 [W.D.N.Y. 2001]* (emphasis added).  The Court finds therefore that <u>CPLR 214-g</u> applies to plaintiff's claim for violation of Title IX and that plaintiff's Title IX claim has been revived.

**VI.  THIS COURT SHOULD GRANT PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE AN AMENDED PLEADING BECAUSE THE DISTRICT COURT'S FUTILITY ANALYSIS AND DETERMINATION RESTED ON AN INCORRECT CONCLUSION OF LAW AS TO THE TIMELINESS OF PLAINTIFF'S TITLE IX CLAIMS**

In the Court below, Defendant argued that Plaintiff's Title IX claims were deficient because Plaintiff did not sufficiently plead that Defendant Ciccone's sexual assault of Plaintiff was done for the abuser's own sexual gratification.  (Defendant's Memo. (ECF 69) at 9-11)).

Plaintiff argued in response: (1) that New York law provides that "sexual gratification" does not need to be specifically pleaded in cases that allege sexual contact (Plaintiff's Memo. at 3-5); (2) an actor's intent for sexual gratification may be inferred from all if the facts and circumstances, particularly when a male person intentionally places his penis on or near any part of a child's body (Plaintiff's Memo. at 5); (3) New York law provides that a person may engage in "sexual contact" in violation of Article 130 of the New York Penal Law, if he acts with the purpose to both humiliate his victim and for his (the abuser's) own sexual gratification (Plaintiff's Memo. at 5-7); and (4) the Complaint provided the District Court with ample grounds to infer that Defendant Ciccone acted for his own sexual gratification when he placed his naked penis on Plaintiff's shoulder (Plaintiff's Memo. (ECF 83) at 7-8).

In an abundance of caution, Plaintiff filed a cross-motion to amend his pleading, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure ("FRCP"), in order to plead the "sexual gratification" element more specifically. (Plaintiff's Memo. (ECF 83) at 28 (*citing,* Proposed Second Amended Complaint (A-146 (ECF 76-2) at ¶¶ 82-83).

The District Court denied Plaintiff's cross-motion, without addressing the substantive issue, on the sole ground that "such an amendment of the Title IX claims would be futile[.]" (A-31).

Where the denial of a motion to amend a pleading is based upon a legal interpretation (such as, i.e., timeliness), this Court reviews the decision on a *de novo* basis. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 242 (2d Cir. 2007); *Littlejohn v. Artuz*, 271 F.3d 360, 362 (2d Cir. 2001). Where, as here, the District Court's futility analysis rested on an incorrect conclusion of law, this Court should reverse and, *inter alia*, grant leave to amend. *See Kassner*, 496 F.3d at 242 and 244.

FRCP 15(a) provides that leave to amend "shall be freely given when justice so requires." As the District Court's conclusion that Plaintiff's Title IX claims were time-barred was incorrect, this Court should permit Plaintiff to file his proposed Second Amended Complaint (*see* ECF 76-2). This will amplify Plaintiff's point that the "sexual gratification" element was sufficiently pleaded for his Title IX claims.

## **CONCLUSION**

The implicated issue of this appeal cries out for clarity and coherence from this Honorable Court. The District Court should have determined that CPLR § 214-g is a revival and tolling statute that reflects New York's legislative choice to carve out an additional limited tolling exception to various statutes of limitation (including CPLR § 214(5)) which apply to child sex abuse-related causes of action.

Based on the aforesaid, Plaintiff-Appellant, CHRISTOPHER KANE, hereby respectfully requests that this Honorable Court issue an order and judgment:

(1)     Holding that the District Court erred in granting Defendants' motion to dismiss the Amended Complaint and dismissing Plaintiff's Title IX claims against Defendant, Mount Pleasant Central School District;

(2)     Vacating the District Court's November 3, 2021 Opinion and Order and November 3, 2021 Judgment which dismissed Plaintiff's Title IX claims, as well as all of his New York State common law claims, in their entirety;

(3)     Granting Plaintiff's cross-motion for leave to file a Second Amended Complaint in its entirety;

(4)     Fully restoring Plaintiff's dismissed New York State common law claims to this action;

(5)     Remanding this case back to the District Court for all necessary and further proceedings; and

(6)    Granting Plaintiff-Appellant any other, different, or further relief as to

which this Court may seem just, proper, or necessary.

Dated:  March 16, 2022
        Orangeburg, New York

Respectfully submitted,


**KEVIN T. MULHEARN, P.C.**

*Kevin T. Mulhearn /S*

_____

KEVIN T. MULHEARN, ESQ.
(KM 2301)

60 Dutch Hill Road, Suite 6B
Orangeburg, New York 10962
(845) 222-8092
kmulhearn@ktmlaw.net

*Attorneys for Plaintiff,*
  *CHRISTOPHER KANE*


**DARREN J. EPSTEIN, ESQ., P.C.**

*Darren J. Epstein /S*

_____

DARREN J. EPSTEIN, ESQ.
(DJ0285)

254 South Main Street, Suite 406
New City, New York 10956
(845) 634-6800
darren@depsteinesq.com

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------------------------------------X
CHRISTOPHER KANE,

                Plaintiff-Appellant,

   —against—

MOUNT PLEASANT CENTRAL SCHOOL
DISTRICT, et al.,

               Defendants-Appellees.
-----------------------------------------------------------------X

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a) AND LOCAL RULE 28.1.1**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7), as modified by Local Rule 28.1.1, because this brief contains 13,861 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. R. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Office Word 2007 in Times New Roman font-style and 14-point font-size for the text and Arial font-style and 12-point font-size for the footnotes.

3.    This brief has been scanned for viruses and no viruses have been detected.

Dated:  March 16, 2022
          Orangeburg, New York

                                  *Kevin T. Mulhearn /S*

                                Kevin T. Mulhearn (KM2301)
                                *Attorney for Plaintiff-Appellant*

# 21-2995-CV

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

CHRISTOPHER KANE,

*Plaintiff-Appellant*,

—against—

MOUNT PLEASANT CENTRAL SCHOOL DISTRICT,
SUSAN GUINEY, FRANK VITERITTI, BRUCE FERGUSON,
NICOLE SCHIMPF, and RICHARD HENNESSY,

*Defendants-Appellees*.

## SPECIAL APPENDIX

**KEVIN T. MULHEARN, P.C.**
60 Dutch Hill Road, Suite 6B
Orangeburg, New York 10962
(845) 222-8092

*Attorneys for Plaintiff-Appellant,*
*Christopher Kane*

**McGIVNEY, KLUGER, CLARK &**
  **INTOCCIA, P.C.**
80 Broad Street
New York, New York 10004
(212) 509-3456

*Attorneys for Defendants-Appellees,*
*Mount Pleasant Central School*
*District, et al.*

On Appeal from the United States District Court, Southern District
of New York: SDNY Docket No. 20-CV-7936 (CS)

## <u>TABLE OF CONTENTS</u>

**<u>PAGES:</u>**

*Full Text of 2019 N.Y. SB 2440 (Original),*
    *Chaptered on February 14, 2019*       SPA-1–SPA-6

*Text of N.Y. CPLR § 214-g*       SPA-7

*Opinion & Order of Hon. Cathy Seibel*,
    dated November 3, 2021 (ECF 89) [*Decision on Appeal*]   SPA-13-SPA-31

## *2019 N.Y. SB 2440*

Chaptered, February 14, 2019

Reporter

2019 N.Y. ALS 11; 2019 N.Y. Laws 11; 2019 N.Y. Ch. 11; 2019 N.Y. SB 2440

NEW YORK ADVANCE LEGISLATIVE SERVICE > NEW YORK 242ND ANNUAL LEGISLATIVE SESSION > CHAPTER 11 > SENATE BILL 2440

## Notice

Added: Text highlighted in green

Deleted: ~~Red text with a strikethrough~~

## Synopsis

AN ACT to amend the criminal procedure law, in relation to the statute of limitations in criminal prosecution of a sexual offense committed against a child; to amend the civil practice law and rules, in relation to the statute of limitations for civil actions related to a sexual offense committed against a child, reviving such actions otherwise barred by the existing statute of limitations and granting trial preference to such actions; to amend the general municipal law, in relation to providing that the notice of claim provisions shall not apply to such actions; to amend the court of claims act, in relation to providing that the notice of intention to file provisions shall not apply to such actions; to amend the education law, in relation to providing that the notice of claim provisions shall not apply to such actions; and to amend the judiciary law, in relation to judicial training relating to sexual abuse of minors and rules reviving civil actions relating to sexual offenses committed against children

Became a law February 14, 2019, with the approval of the Governor.

Passed by a majority vote, three-fifths being present.

## Text

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Paragraph (f) of subdivision 3 of section NY CLS *CPL § 30.10* of the criminal procedure law, as separately amended by chapters 3 and 320 of the laws of 2006, is amended to read as follows:

2019 N.Y. SB 2440

(f) For purposes of a prosecution involving a sexual offense as defined in article one hundred thirty of the penal law, other than a sexual offense delineated in paragraph (a) of subdivision two of this section, committed against a child less than eighteen years of age, incest in the first, second or third degree as defined in sections 255.27, 255.26 and 255.25 of the penal law committed against a child less than eighteen years of age, or use of a child in a sexual performance as defined in *section 263.05 of the penal law*, the period of limitation shall not begin to run until the child has reached the age of ~~eighteen~~twenty-three or the offense is reported to a law enforcement agency or statewide central register of child abuse and maltreatment, whichever occurs earlier.


**Section 2.** The opening paragraph of section NY CLS *CPLR § 208* of the civil practice law and rules is designated subdivision (a) and a new subdivision (b) is added to read as follows:

(b) Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, with respect to all civil claims or causes of action brought by any person for physical, psychological or other injury or condition suffered by such person as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against such person who was less than eighteen years of age, or the use of such person in a sexual performance as defined in *section 263.05 of the penal law*, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age, such action may be commenced, against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of said conduct, on or before the plaintiff or infant plaintiff reaches the age of fifty-five years. In any such claim or action, in addition to any other defense and affirmative defense that may be available in accordance with law, rule or the common law, to the extent that the acts alleged in such action are of the type described in subdivision one of *section 130.30 of the penal law* or subdivision one of *section 130.45 of the penal law*, the affirmative defenses set forth, respectively, in the closing paragraph of such sections of the penal law shall apply.


**Section 3.** The civil practice law and rules is amended by adding a new section NY CLS *CPLR § 214-g* to read as follows:

§ 214-g. Certain child sexual abuse cases.

Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a

2019 N.Y. SB 2440

person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in *section 263.05 of the penal law*, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section. In any such claim or action: (a) in addition to any other defense and affirmative defense that may be available in accordance with law, rule or the common law, to the extent that the acts alleged in such action are of the type described in subdivision one of *section 130.30 of the penal law* or subdivision one of *section 130.45 of the penal law*, the affirmative defenses set forth, respectively, in the closing paragraph of such sections of the penal law shall apply; and (b) dismissal of a previous action, ordered before the effective date of this section, on grounds that such previous action was time barred, and/or for failure of a party to file a notice of claim or a notice of intention to file a claim, shall not be grounds for dismissal of a revival action pursuant to this section.

**Section 4.** Subdivision (a) of rule NY CLS *CPLR § 3403* of the civil practice law and rules is amended by adding a new paragraph 7 to read as follows:

7. any action which has been revived pursuant to section two hundred fourteen-g of this chapter.

**Section 5.** Subdivision 8 of section NY CLS *Gen Mun § 50-e* of the general municipal law, as amended by chapter 24 of the laws of 1988, is amended to read as follows:

8. Inapplicability of section. (a) This section shall not apply to claims arising under the provisions of the workers' compensation law, the volunteer firefighters' benefit law, or the volunteer ambulance workers' benefit law or to claims against public corporations by their own infant wards.

(b) This section shall not apply to any claim made for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in *section 263.05 of the penal law* committed against a child less than eighteen years of age.

2019 N.Y. SB 2440

**Section 6.** Section NY CLS *Gen Mun § 50-i* of the general municipal law is amended by adding a new subdivision 5 to read as follows:

    5. Notwithstanding any provision of law to the contrary, this section shall not apply to any claim made against a city, county, town, village, fire district or school district for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in *section 263.05 of the penal law* committed against a child less than eighteen years of age.

**Section 7.** Section NY CLS Ct C Act § 10 of the court of claims act is amended by adding a new subdivision 10 to read as follows:

    10. Notwithstanding any provision of law to the contrary, this section shall not apply to any claim to recover damages for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in *section 263.05 of the penal law* committed against a child less than eighteen years of age.

**Section 8.** Subdivision 2 of section NY CLS *Educ § 3813* of the education law, as amended by chapter 346 of the laws of 1978, is amended to read as follows:

    2. Notwithstanding anything to the contrary hereinbefore contained in this section, no action or special proceeding founded upon tort shall be prosecuted or maintained against any of the parties named in this section or against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or member or employee acting in the discharge of his duties within the scope of his employment and/or under the direction of the board of education, trustee or trustees, or governing body of the school unless a notice of claim shall have been made and served in compliance with *section fifty-e of the general municipal law.* Every such action shall be commenced pursuant to the provisions of *section fifty-i of the general municipal law;* provided, however, that this section shall not apply to any claim to recover damages for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of

2019 N.Y. SB 2440

age, or the use of a child in a sexual performance as defined in *section 263.05 of the penal law* committed against a child less than eighteen years of age.

**Section 9.** Section NY CLS Jud § 219-c of the judiciary law, as added by chapter 506 of the laws of 2011, is amended to read as follows:

§ 219-c. Crimes involving sexual assault and the sexual abuse of minors; judicial training.

The office of court administration shall provide training for judges and justices with respect to crimes involving sexual assault, and the sexual abuse of minors.

**Section 10.** The judiciary law is amended by adding a new section NY CLS Jud § 219-d to read as follows:

§ 219-d. Rules reviving certain actions; sexual offenses against children.

The chief administrator of the courts shall promulgate rules for the timely adjudication of revived actions brought pursuant to *section two hundred fourteen-g of the civil practice law and rules.*

**Section 11.**

The provisions of this act shall be severable, and if any clause, sentence, paragraph, subdivision or part of this act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, subdivision or part thereof directly involved in the controversy in which such judgment shall have been rendered.

**Section 12.**

This act shall take effect immediately; except that section nine of this act shall take effect six months after this act shall have become a law; provided, however, that training for cases brought pursuant to *section 214-g of the civil practice law and rules*, as added by section three of this act, shall commence three months after this act shall have become a law; and section ten of this act shall take effect three months after this act shall have become a law.

## History

Approved by the Governor February 14, 2019

Effective date: February 14, 2019

## Sponsor

Hoylman

NEW YORK ADVANCE LEGISLATIVE SERVICE
Copyright © 2022 LexisNexis. All rights reserved.

End of Document

# NY CPLR § 214-g

Current through 2022 released Chapters 1-49, 61-70

*New York Consolidated Laws Service  >  Civil Practice Law And Rules (Arts. 1 — 100)  >  Article 2 Limitations of Time (§§ 201 — 218)*

## § 214-g. Certain child sexual abuse cases.

Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in *section 263.05 of the penal law*, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section. In any such claim or action: (a) in addition to any other defense and affirmative defense that may be available in accordance with law, rule or the common law, to the extent that the acts alleged in such action are of the type described in subdivision one of *section 130.30 of the penal law* or subdivision one of *section 130.45 of the penal law*, the affirmative defenses set forth, respectively, in the closing paragraph of such sections of the penal law shall apply; and (b) dismissal of a previous action, ordered before the effective date of this section, on grounds that such previous action was time barred, and/or for failure of a party to file a notice of claim or a notice of intention to file a claim, shall not be grounds for dismissal of a revival action pursuant to this section.

## History

*L 2019, ch 11, § 3*, effective February 14, 2019; *L 2020, ch 130, § 1*, effective August 3, 2020.

**SPA-8 THROUGH SPA-12**

These pages have intentionally been left blank so that the page numbers in the Special Appendix for the District Court's November 3, 2021 Opinion & Order Will Correspond Precisely With the Same Page Numbers Designated for that Document in the Appendix (A-13-31).

**SPA-13**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHRISTOPHER KANE,

                                    Plaintiff,

         - against -                                    **OPINION & ORDER**

MOUNT PLEASANT CENTRAL SCHOOL                            No. 20-CV-7936 (CS)
DISTRICT, SUSAN GUINEY, FRANK
VITERITTI, BRUCE FERGUSON, NICOLE
SCHIMPF, and RICHARD HENNESSEY,

                                    Defendants.
-----------------------------------------------------------x

<u>Appearances</u>:

Kevin T. Mulhearn
Kevin T. Mulhearn, P.C.
Orangeburg, New York

Darren J. Epstein
Darren J. Epstein, Esq., P.C.
New City, New York
*Counsel for Plaintiff*

Trish L. Wilson
Gary J. Intoccia
McGivney, Kluger, Clark & Intoccia, PC
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

         Plaintiff brings this action against the Mount Pleasant Central School District (the

"MPCSD"), and several former school district employees:  Susan Guiney, Frank Viteritti, Bruce

Ferguson, Nichole Schimpf, and Richard Hennessey (collectively, "Defendants").  Before the

Court is Defendants' motion to dismiss the Amended Complaint, (ECF No. 60 ("AC")), pursuant

to Federal Rule of Civil Procedure 12(b)(6), (ECF No. 68), and Plaintiff's cross-motion to amend

SPA-14

his complaint, (ECF No. 83 ("P's Opp.") at 28).  For the following reasons, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## I.    **BACKGROUND**

For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint.

### A.    **Facts**

This case arises from Plaintiff's experience as a high school freshman at Westlake High School ("Westlake"), a school within the MPCSD, in 2008 and 2009.  In August 2008, as an incoming freshman, Plaintiff started attending football practices with the varsity football team (the junior varsity team having been disbanded).  (AC ¶¶ 46-47.)  At the time, Plaintiff was thirteen years old, (*id.* ¶ 53), but as a member of the football team he was required to practice and share the locker room with students who were seventeen or eighteen years old, (*id.* ¶ 47).

Plaintiff became the target of bullying at the hands of older teammates, who "selected him to be the 'team bitch,' cruelly mocked him for his then not-yet-fully-developed sexual organs, questioned his sexual preference, and taunted and threatened him by letting him know that he should expect to receive harsh treatment from them for the rest of the 2008 football season."  (*Id.* ¶ 54.)  Similar taunting and verbal abuse continued throughout the football season.  (*Id.* ¶¶ 55, 60, 62, 89, 92.)  Plaintiff was forced to do tasks such as cleaning up after the team ate lunch in the locker room and scrubbing the toilets used by the team.  (*Id.* ¶ 64.)

Plaintiff was also physically bullied by an older teammate who was gratuitously rough with Plaintiff during practices, including by grabbing his facemask and throwing him to the ground (without any arguable sport-related justification).  (*Id.* ¶¶ 87, 89-91, 93.)  This teammate also called Plaintiff a "pussy" or "bitch," and would frequently try to get Plaintiff to flinch by

2

**SPA-15**

indicating he was about to punch Plaintiff. (*Id.* ¶¶ 92-93.) On or about October 20, 2008, in

response to repeated physical assaults, Plaintiff told the teammate that he would get someone

who worked with Plaintiff's father to beat up and "kill" the teammate. (*Id.* ¶ 98.) At the time,

neither this teammate nor anyone else who heard the remark reported it to the team's coaches,

the school, or law enforcement. (*Id.* ¶¶ 101-104.)

In addition to the above conduct, Plaintiff alleges that one teammate – Philip Ciccone, a

16- or 17-year-old junior, (*id.* ¶ 54) – "flash[ed]" Plaintiff "by thrusting his naked penis in close

proximity to Plaintiff's face" on at least ten occasions between August and November 2008. (*Id.*

¶ 56.) On or about August 20 or 21, 2008, Ciccone flashed his penis at Plaintiff in the school

parking lot. (*Id.* ¶ 62.) And on or about August 25 or 26, 2008, Ciccone "walk[ed] up to

Plaintiff and plac[ed] his naked penis on Plaintiff's shoulder." (*Id.* ¶ 78.) Ciccone later bragged

about this conduct to numerous classmates. (*Id.* ¶¶ 84-85.)

Plaintiff alleges that at least some of these incidents were witnessed by football team

coaches, who failed to intervene. (*Id.* ¶¶ 58-59.) As early as August 23 or 24, 2008, Plaintiff

told his parents he was being harassed and hazed, without providing specifics, and his parents

spoke with the head football coach, Defendant Richard Hennessey, who assured Plaintiff's

parents he would "take care of it." (*Id.* ¶¶ 65-72.) Hennessey subsequently warned the team that

he would not tolerate hazing and threatened to throw off the team any player credibly accused of

hazing. (*Id.* ¶¶ 73-74.) But according to Plaintiff, Hennessey made no changes to prevent or

mitigate hazing, took no action to discipline any individuals, and never followed up to ascertain

the specific facts or identify the parties involved in the incidents about which Plaintiff

complained. (*Id.* ¶¶ 75-77.)

3

**SPA-16**

On January 9, 2009, Plaintiff informed his mother for the first time about the specifics of the incidents involving Ciccone, including that Ciccone placed his penis on Plaintiff's shoulder and frequently flashed him, and about the physical assaults by the other older teammate. (*Id.* ¶¶ 112-113, 116.)  That same evening, Plaintiff's mother reported these allegations to the Westlake Principal, Defendant Frank Viteritti, (*id.* ¶ 118), and on January 10, 2009, Plaintiff's mother reported Ciccone's conduct to the local police, (*id.* ¶ 117).  On January 12, 2009, Plaintiff's parents met with Viteritti as well as the MPCSD superintendent, Defendant Susan Guiney, to discuss the incidents. (*Id.* ¶¶ 120, 123.)  Ultimately, Guiney and Viteritti directed Defendant Nicole Schimpf, the MPCSD Title IX Complaint Officer, and Defendant Bruce Ferguson, Westlake's Assistant Principal, to investigate Plaintiff's allegations. (*Id.* ¶¶ 124, 126.)

Plaintiff characterizes the school's investigation as a "sham" and alleges that the school's goals were to shield the accused older students from any real punishment and to protect the school from reputational damage and negative publicity. (*Id.* ¶¶ 127-129, 132-134.)  Although Plaintiff's complaints about his treatment prompted the investigation, Defendant Ferguson, in interviewing Plaintiff, focused on the October 20, 2008 threat Plaintiff made to his older teammate, (*id.* ¶ 140), and on or about January 21, 2009, Defendants suspended Plaintiff for five days based on that incident, (*id.* ¶ 141).

On January 23, 2009, an attorney hired by Plaintiff's parents faxed the school a letter demanding, among other things, that the school revoke the suspension, and threatening legal action against the MPCSD and various employees if they did not take corrective measures. (*Id.* ¶ 148.)  Plaintiff's parents ultimately entered into a stipulation of settlement with the MPCSD, and Plaintiff was reinstated. (*Id.* ¶ 150.)

4

**SPA-17**

In or about April 2009, Defendants concluded their investigation of Plaintiff's claims,

and on April 3, 2009, Schimpf wrote a letter to Plaintiff's parents, stating that she had submitted

her report to Guiney and that, while she could not share the specifics with Plaintiff or his parents,

she had concluded that "student(s) were involved in inappropriate actions." (*Id.* ¶¶ 152-153.)

Her letter also stated that "information about this case is of a confidential nature" and warned

that "[t]o the extent that you choose to disclose information you may be in violation of federal

and/or state law, including but not limited to FERPA (Family Education Rights and Privacy

Act)." (*Id.* ¶ 153.)  Plaintiff's counsel received a copy of this letter. (*Id.* ¶ 264.)

### B.   Procedural History

More than eleven years after these events, on September 25, 2020, Plaintiff initiated this

lawsuit. (ECF No. 1.)  At a pre-motion conference on January 11, 2021, the Court granted

Plaintiff leave to amend the complaint. (*See* Minute Entry dated Jan. 11, 2021).  On February 3,

2021, Plaintiff filed the Amended Complaint, which brings claims against the MPCSD under

Title IX (counts two and three); against all Defendants under the New York Human Rights Law

(counts four and five); against all Defendants for intentional infliction of emotional distress

(count six); and against the MPCSD for "negligent security and supervision" and "breach of duty

of care" (counts seven and eight). (AC.)[1]

Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of

Procedure 12(b)(6) on March 17, 2021, (ECF No. 68), along with a twenty-four-page

memorandum of law, (ECF No. 69 ("Ds' Br.")).  In support of their motion, Defendants

submitted an affidavit from Kevin Gerard Maguire, an attorney who represented the MPCSD

---

[1] Plaintiff also brought a sexual battery claim against Ciccone (count one) and named
Ciccone in the intentional infliction of emotional distress claim, (AC ¶ 305), but on June 3, 2021,
Plaintiff voluntarily dismissed all claims against Ciccone with prejudice, (ECF No. 88).

**SPA-18**

during the relevant timeframe.  (ECF No. 70-2.)  The affidavit annexed a copy of a Notice of

Claim, dated March 25, 2009, served on Plaintiff's behalf by former counsel, and a copy of an

April 23, 2009 letter from Plaintiff's former counsel to Mr. Maguire.  (ECF Nos. 70-3, 70-4.)

On the same day, Ciccone filed his own separate motion to dismiss, (ECF No. 71), and four-page

memorandum of law, (ECF No. 72).  Plaintiff, without seeking leave to exceed the Court's

twenty-five-page limit for memoranda of law, initially filed a fifty-page opposition brief, (ECF

No. 78), which the Court struck, (ECF No. 80).  The Court granted leave for Plaintiff to re-file a

brief no longer than twenty-eight pages (the combined length of the two defense briefs), (ECF

No. 82), and Plaintiff filed his opposition on May 7, 2021, (P's Opp.).  As part of his opposition,

Plaintiff included a limited cross-motion for permission to further amend his complaint should

the Court conclude that he was required to plead that Ciccone acted for his own sexual

gratification to establish that Ciccone's conduct falls within N.Y. C.P.L.R. § 214-g, the New

York Child Victims Act (the "CVA").  (P's Opp. at 28.)  On June 1, 2021, Defendants filed their

reply brief.  (ECF No. 84 ("Ds' Reply").)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

**SPA-19**

will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8

"marks a notable and generous departure from the hypertechnical, code-pleading regime of a

prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions." *Iqbal*, 556 U.S. at 678-79.

   In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

   When deciding a motion to dismiss, a court is entitled to consider:

   (1) facts alleged in the complaint and documents attached to it or incorporated in
   it by reference, (2) documents integral to the complaint and relied upon in it, even
   if not attached or incorporated by reference, (3) documents or information
   contained in defendant's motion papers if plaintiff has knowledge or possession
   of the material and relied on it in framing the complaint . . . , and (5) facts of
   which judicial notice may properly be taken under Rule 201 of the Federal Rules
   of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)

(cleaned up).

## III.   **DISCUSSION**

   Defendants assert that Plaintiff's Title IX claims must be dismissed as untimely. For the

reasons stated below, I agree, and I decline to exercise supplemental jurisdiction over Plaintiff's

state law claims in the absence of a viable federal claim.

# SPA-20

A.    **Title IX**

1.    **Statute of Limitations**

Congress provided no statute of limitations for Title IX claims, so courts "apply the most appropriate or analogous state statute of limitations." *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (*per curiam*) (cleaned up).[2]  In *Curto*, the Second Circuit (following several other circuits) held that "Title IX claims are most closely analogous to personal injury actions" and applied the three-year general personal injury statute of limitations found in N.Y. C.P.L.R. § 214(5). *Id.* (citing *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (11th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728-29 (6th Cir. 1996); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989)).

The three-year personal injury statute of limitations in New York does not begin to run until a plaintiff reaches the age of majority.  N.Y. C.P.L.R. § 208(a); *see Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9 (2d Cir. 2014) (summary order); *see also Boyle v. N. Salem Cent. Sch. Dist.*, No. 19-CV-8577, 2020 WL 2319116, at *3 (S.D.N.Y. May 11, 2020) ("[T]his Court looks to the state's general tolling rules for applicable tolling standards.").  Here, Plaintiff was born in September 1994, (*see* AC ¶ 44), and turned eighteen in September 2012, so the three-year limitations period ran in September 2015, five years before he filed this suit.

According to Plaintiff, this is not the end of the story:  he argues that the CVA revives his Title IX claims.  (P's Opp. at 12-24.)  New York's CVA temporarily lifts the statute-of-

---

[2] While there is a four-year federal catch-all statute of limitations under 28 U.S.C. § 1658(a), that provision only applies to claims that arise from federal statutes enacted after 1990.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  Because Title IX became law in 1972, § 1658(a) is inapplicable.  *Curto*, 392 F.3d at 504.

SPA-21

limitations bar on "every civil claim or cause of action brought against any party alleging

intentional or negligent acts or omissions by a person for physical, psychological, or other injury

or condition suffered as a result of conduct which would constitute a sexual offense" under New

York law. N.Y. C.P.L.R. § 214-g.[3]  Plaintiff argues that because the conduct that gives rise to

his Title IX claims constitutes a sexual offense under New York law, the applicable statute of

limitations is not the general personal injury statute of limitations but, instead, the exception for

sexual abuse claims created by the CVA. (*See* P's Opp. at 13, 20, 24.)  Plaintiff contends that

*Board of Regents v. Tomanio*, 446 U.S. 478 (1980), and *Johnson v. Railway Express Agency*, 421

U.S. 454 (1975),[4] require the Court to apply all "tolling and revival rules and exceptions" that

would be applicable based on the nature of the underlying conduct – here, a series of sexual

offenses committed against Plaintiff while he was a minor.  (P's Opp. at 14-17.)

Plaintiff's argument, however, fails to account for subsequent developments in Supreme

Court jurisprudence. *Tomanio* and *Johnson* stand for the proposition that where there is "no

specifically stated or otherwise relevant federal statute of limitations for the federal substantive

claim created by Congress . . . , 'the controlling period would ordinarily be the most appropriate

one provided by state law'" for each individual federal claim, unless the state statute is

inconsistent with federal law. *Tomanio*, 446 U.S. at 485 (quoting *Johnson*, 421 U.S. at 462).

But this directive, the Supreme Court later noted, "bred confusion and inconsistency in the lower

---

[3] The parties dispute whether the conduct alleged on Ciccone's part constitutes a sexual offense that falls within the CVA.  (*Compare* Ds' Br. at 9-11, *and* Ds' Reply at 8-9, *with* P's Opp. at 2-8.)  Because I conclude that the CVA does not extend the statute of limitations for Title IX claims, I need not reach that question.

[4] In *Tomanio*, the plaintiff brought federal claims under 42 U.S.C. § 1983, *see Tomanio*, 446 U.S. at 480 and in *Johnson* the plaintiff brought federal claims under 42 U.S.C. § 1981, *see Johnson*, 421 U.S. at 455.

**SPA-22**

courts and generated time-consuming litigation," which often left parties with "no idea whether a federal civil rights claim was barred until a court ruled on their case." *Owens v. Okure*, 488 U.S. 235, 240 (1989). "Predictability, a primary goal of statutes of limitations, was thereby frustrated." *Id.*

In *Wilson v. Garcia*, a case brought under 42 U.S.C. § 1983, the Supreme Court addressed the "conflict, confusion, and uncertainty" inherent in *Johnson*'s and *Tomanio*'s case-by-case approach of assessing the state statute of limitations most analogous to each individual federal claim. *Wilson v. Garcia*, 471 U.S. 261, 266, 275 (1985), *partially superseded by statute as stated in Jones*, 541 U.S. at 377-80. The Court "expressly rejected the proposition that the limitations period for a § 1983 claim depends on the nature of the underlying right being asserted." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 (2005) (citing *Wilson*, 471 U.S. at 271-75). Instead, under *Wilson*, federal courts must "select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Wilson*, 471 U.S. at 275. The Court reasoned that this simpler approach would advance "federal interests in uniformity, certainty, and the minimization of unnecessary litigation," *id.*, and "best fits [section 1983]'s remedial purpose," *id.* at 272. Applying this rule and concluding that "§ 1983 claims are best characterized as personal injury actions," the Court deemed application of a state's personal injury statute of limitations appropriate for all section 1983 claims. *Id.* at 280.

Taking the principles discussed in *Wilson* a step further, in *Owens* the Supreme Court held that, given the choice between a state statute of limitations for enumerated intentional torts and a "residual or general personal injury statute of limitations," the court should apply latter. *Owens*, 488 U.S. at 236. The *Owens* Court explained that "for years we urged courts to select the state statute of limitations 'most analogous,' and 'most appropriate,' to the particular § 1983

10

SPA-23

action, so long as the chosen limitations period was consistent with federal law and policy." *Id.*

at 239 (first quoting *Tomanio*, 446 U.S. at 488, then quoting *Johnson*, 421 U.S. at 462). *Wilson*

had partially addressed the confusion these rules created in lower courts, but "in States with

multiple statutes of limitations for personal injury actions," lower courts continued to differ over

how to determine which statute applied. *Id.* at 241-42. In addressing whether to apply New

York's residual personal injury statute of limitations or the intentional-tort statute of limitations,

the *Owens* Court canvassed the numerous different limitations periods that would come into play

under the intentional-tort approach. *Id.* at 249-50.[5] Opting to promote consistency and

predictability, the *Owens* Court held that "where state law provides multiple statutes of

limitations for personal injury actions, courts considering § 1983 claims should borrow the

general or residual statute for personal injury actions." *Id.*

While the Supreme Court's case law regarding the federal "borrowing" of state law

statute of limitations in civil rights cases developed in section 1981 and 1983 cases, the

principles discussed in *Wilson* and *Owens* apply in Title IX cases. *See Curto*, 392 F.3d at 504

(applying the general state statute of limitations for personal injury actions to Title IX claims

"accords with our own practice of borrowing the state statute of limitations for personal injury

actions for analogous federal discrimination actions brought pursuant to 42 U.S.C. §§ 1981 and

1983"); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) ("While this

court has not yet considered the appropriate limitations period for Title IX claims, every other

_____

[5] As Defendants point out, (Ds' Reply at 5), a special statute for child abuse victims was
one such example, *see Owens*, 488 U.S. at 244 n.8; *see also Bonneau v. Centennial Sch. Dist.
No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) ("[I]n *Owens*, the Court listed special statutes of
limitations for child abuse victims as examples where it feared 'confusion over the choice
among . . . multiple intentional tort provisions.'") (second alteration in original) (quoting *Owens*,
488 U.S. at 244 & n.8).

11

**SPA-24**

circuit to have considered the matter in a published opinion has concluded that Title IX is subject

to the same limitations period as § 1983.") (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d

1208, 1212-13 (10th Cir. 2014); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir.

2006); *Egerdahl*, 72 F.3d at 618).[6] Plaintiff, who relies on *Tomanio* and *Johnson* (in which the

plaintiffs brought their claims under section 1983 and section 1981, respectively), does not

appear to dispute the applicability of the principles developed in the section 1981 and 1983

context to Title IX.  (P's Br. at 15-16.)[7]

Notwithstanding *Wilson*, *Owen*, and *Curto*, Plaintiff argues that "federal law mandates

that it is the exception ([the CVA]), not the rule (N.Y. CPLR § 214(5)), that is controlling."  (P's

Opp. at 20.)  But federal law mandates exactly the opposite.  *See Abrams*, 544 U.S. at 124-25;

(federal courts must "'select, in each State, the one most appropriate statute of limitations for *all*

§ 1983 claims'") (emphasis in original) (quoting *Wilson*, 471 U.S. at 275); *Owens*, 488 U.S. at

250 ("where state law provides multiple statutes of limitations for personal injury actions, courts

. . . should borrow the general or residual statute for personal injury actions"); *Curto*, 392 F.3d at

504 (applying N.Y. C.P.L.R. § 214(5) to a Title IX claim because "Title IX claims are most

---

[6] Title IX does not exclusively address sex offenses committed against children – rather, like § 1983, Title IX "embraces a broad array of actions for injury to personal rights," *Owens*, 488 U.S. at 242, many of which have nothing to do with sexual misconduct.  Thus, as in the section 1983 context, there is the risk that a case-by-case inquiry into the proper statute of limitations would lead to inconsistent results that have "less to do with the general nature" of relief under the federal statute in question "than with counsel's artful pleading and ability to persuade the court that the facts and legal theories . . . resemble[] a particular common-law or statutory cause of action." *Id.* at 240.

[7] Similarly, the Supreme Court has applied the rule from *Owens* more broadly and held that federal statutes that protect similar rights are subject to the same general statute of limitations. *See Reed v. United Transp. Union*, 488 U.S. 319, 326 (1989) (general personal injury statute of limitations applies to actions under § 101(a)(2) of the Labor-Management Reporting and Disclosure Act, which, like § 1983, protects exercise of First Amendment rights).

closely analogous to personal injury actions"). Applying the CVA here, in lieu of New York's

general personal injury statute of limitations, would force the Court rely on the "nature of the

underlying right being asserted" to find the appropriate limitations period – an approach that the

Supreme Court has "expressly rejected." *Abrams*, 544 U.S. at 124 (citing *Wilson*, 471 U.S. at

271-275).

This Court's determination that the CVA does not extend the statute of limitations for

Title IX claims is consistent with Judge Briccetti's conclusion in *Boyle*:

> Although Section 214-g extends the statute of limitations for state law claims
> respecting child sexual abuse, it does not extend the statute of limitations for
> Section 1983 claims. This is because "where state law provides multiple statutes
> of limitations for personal injury actions, courts considering § 1983 claims should
> borrow the general or residual statute for personal injury actions." *Anthes v. New
> York Univ.*, 2018 WL 1737540, at *10 (S.D.N.Y. Mar. 12, 2018) (quoting *Owens
> v. Okure*, 488 U.S. at 249-50). As noted above, in New York, the applicable
> general or residual statute of limitations applicable to plaintiff's Section 1983
> claim is three years.

*Boyle*, 2020 WL 2319116, at *3. Plaintiff argues that in *Boyle* Judge Briccetti only addressed the

plaintiff's argument about when his section 1983 claim accrued, and that the court did not reach

the issue of whether it was required to adopt "*New York's tolling and revival statutes (including

N.Y. CPLR § 214-g).*" (P's Opp. at 19-20) (emphasis in original). But, as the above passage

makes clear, the *Boyle* opinion is plainly not confined to a discussion of accrual: the court

spends several paragraphs addressing essentially the same question raised here – that is, whether

the general personal injury statute or the specialized CVA applies to a federal civil rights claim.

*See Boyle*, 2020 WL 2319116, at *2-3. Plaintiff's argument that the *Boyle* plaintiff's failure to

make the arguments raised by Plaintiff here prevented Judge Briccetti from considering what

statute of limitations should apply to the federal claim before him, (P's Opp. at 19-20), is

likewise without merit. Which statute of limitations applies is plainly within the scope of what a

## SPA-26

judge may consider and rule on when the parties raise the issue of whether a claim is timely, and

Judge Briccetti plainly addressed the issue.[8]

Plaintiff strains to present the CVA as simple tolling rule that must be applied here by

virtue of New York's statutory scheme.  (P's Opp. at 15-17.)[9]  But the CVA is more than a

generally applicable tolling provision:  it is a revival statute that creates a unique statute of

---

[8] Plaintiff's attempt to distinguish *Collins v. Dutton*, a Delaware Superior Court decision, is likewise unconvincing.  Plaintiff claims, without citation, that the Delaware Child Victims Act currently only waives the limitations period in suits against an alleged abuser.  (P's Opp. at 22-23.)  As an initial matter, this appears to be incorrect as a statement of Delaware law.  *See* 10 Del. C. § 8145; *Collins v. Dutton*, No. S19C-01-045, 2019 WL 6048979, at *4, *6 (Del. Super. Ct. Nov. 14, 2019).  Nothing in the language of the statute indicates that only an abuser is subject to suit:

> A cause of action based upon the sexual abuse of a minor by an adult may be filed in the Superior Court of this State at any time following the commission of the act or acts that constituted the sexual abuse.  A civil cause of action for sexual abuse of a minor shall be based upon sexual acts that would constitute a criminal offense under the Delaware Code.

10 Del. C. § 8145.  Indeed, the *Collins* court explicitly found that "[plaintiff]'s assault and battery claims, if legally sustainable against the [school] board through either *respondeat superior*/vicarious liability, are subject to an unlimited statute of limitations pursuant to the CVA."  *Collins*, 2019 WL 6048979, at *6.  Moreover, if the plaintiff's Title IX claim were time-barred simply because the Delaware CVA applies only to the abuser and thus would not apply to a claim against the school district, the *Collins* court could simply have noted that and moved on.  *Id.* at *3-5.  Instead, the court explained that the Delaware CVA could not properly be applied to Title IX claims because "a Title IX claim does not necessarily arise from an incident of sexual harassment/abuse alone," but "such a claim is based on a school district official's actions or inactions."  *Id.* at *4.  This holding is consistent with federal precedent directing courts to apply "the one most analogous state statute of limitations" to all claims brought under a federal civil rights statute, *Owens*, 488 U.S. at 240 (citing *Wilson*, 471 U.S. at 266), and precedent in this Circuit and elsewhere that the one most analogous statute of limitations for Title IX claims is a state's general or residual personal injury statute of limitations, *e.g.*, *Curto*, 392 F.3d at 504.

[9] *Wilson* directed that the federal court look to state law for "the length of the limitations period, and closely related questions of tolling and application."  471 U.S. at 269; *see Bonneau*, 666 F.3d at 580 (applying residual state statute of limitations and general minor tolling statute, but not special child abuse statute); *Boyle*, 2020 WL 2319116, at *2-3 (to the same effect); *see also Doe v. NYS Off. of Child. & Fam. Servs.*, No. 20-CV-1195, 2021 WL 2826457, at *7-8 (N.D.N.Y. July 7, 2021) (concluding that the CVA created new statutes of limitations, not new tolling provisions, and applying the residual three-year statute of limitations to a § 1983 claim).

14

SPA-27

limitations for a specific subcategory of cases.  As applied in this case, the CVA would not "toll"

the limitations period for Plaintiff's claim, but would revive a claim for which the limitations

period has long since run.  Moreover, unlike the generally applicable tolling rule applied in

*Twersky* – which tolls the statute of limitations until a claimant reaches the age of majority, *see*

*Twersky*, 579 F. App'x at 9 – the CVA would only apply to Title IX claims with a particular set

of facts.  That is, application of the CVA would "depend upon the particular facts or the precise

legal theory of each claim," *Wilson*, 471 U.S. at 273-74, and would introduce exactly the sort of

"chaos and uncertainty" that *Wilson* and *Owens* sought to avoid, *Owens*, 488 U.S. at 243 (citing

*Wilson*, 471 U.S. at 275).  The parties' briefs here, in which they debate whether the underlying

conduct here qualifies as "sexual abuse" covered by the CVA, (*see* Ds' Br. at 9-11, P's Opp. at

2-8; Ds' Reply at 8-9), bear out the wisdom of eschewing a "case-by-case approach" to selecting

the appropriate state statute of limitations.  *Owens*, 488 U.S. at 240.

      In short, because this Court must apply "the one most analogous state statute of

limitations" to all Title IX claims, *see Owens*, 488 U.S. at 576, and because the Second Circuit

has concluded that N.Y. C.P.L.R. § 214(5) is that one most analogous statute of limitations,

*Curto*, 392 F.3d at 504, the statute of limitations for Plaintiff's Title IX is three years.

      **2.**      **Abandoned Accrual and Equitable Tolling Arguments**

      Plaintiff alleges in the Amended Complaint that, even though the events giving rise to the

claims in this case all occurred in 2008 and 2009, his Title IX retaliation claim did not accrue

until September 1, 2020, when Plaintiff's current counsel informed him that Schimpf's April 3,

2009 letter had misrepresented Plaintiff's and his parents' legal duty to keep their allegations

confidential.  (AC ¶¶ 257-269.)  Plaintiff alleges that his former attorneys failed to "advise[]

Plaintiff and/or his parents that said April 3, 2009 letter contained false misrepresentations about

**SPA-28**

the extant New York law and federal law pertaining to the imposition of any duties of

confidentiality upon Plaintiff and/or his parents." (*Id.* ¶ 265.) As a result, according to the

Amended Complaint, until September 2020 Plaintiff "did not know and should [not] have known

that his civil rights were violated by [MPCSD's] retaliation against him in violation of Title IX."

(*Id.* ¶ 267.) For the same reasons, and in the alternative, the Amended Complaint states that

equitable tolling should apply to preserve the Title IX retaliation claims. (*Id.* ¶¶ 270-274.)

Based on these allegations, Defendants argued in support of their motion to dismiss that

the standard rule for accrual applies to the Title IX claims (under which the claim accrues as

soon as a plaintiff has a cause of action); even if the "discovery rule" exception applies here,

Plaintiff would have "discovered" his injury long before September 2020; and Plaintiff failed to

meet his burden to show wrongful behavior on the part of Defendants that would have induced

him to delay filing such that equitable estoppel applies. (Ds' Br. at 14-17.) Defendants also

raised factual issues with Plaintiff's account. (*See* note 10 below.)

Despite having included these allegations in the Amended Complaint, Plaintiff in his

opposition brief addressed none of Defendants' responsive arguments. Plaintiff mentions that

federal courts must apply federal common law to determine when a claim accrued, but makes

this argument in the context of attempting to distinguish *Boyle* and advance his point that the

CVA applies to his Title IX claim. (P's Opp. at 17-19.) He states that the default rule is that "a

claim generally accrues once the plaintiff has reason to know of the injury which is the basis of

the action," (*id.* at 18) (cleaned up), but he does not argue that the discovery rule should apply

here nor even mention the theory of delayed accrual. Similarly, his equitable tolling argument is

raised in the context of *Boyle*'s holding, but otherwise Plaintiff makes no attempt to address

Defendants' argument that the Court should not apply that doctrine. (*Id.* at 19.) Indeed, in

16

**SPA-29**

Plaintiff's first opposition brief – which the Court struck for exceeding the applicable page limit – he expressly waived both the accrual and equitable estoppel arguments. (ECF No. 78 at 33 n.5.) An accompanying affidavit of counsel – never stricken or retracted – likewise states that Plaintiff has withdrawn his "delayed accrual and/or equitable estoppel" arguments. (ECF No. 76 ¶ 7.)[10] But even based on the operative brief alone, Plaintiff has abandoned these arguments.

"At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *see, e.g.*, *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases); *Bonilla v. Smithfield Assocs. LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009). Plaintiff has completely failed to address Defendants' arguments with regard to delayed accrual and equitable estoppel, and thus the Court deems those arguments abandoned.

Because, as discussed above, the statute of limitations for Plaintiff's Title IX claims is three years, the action was filed well beyond the three-year period, and Plaintiff has abandoned his alternative arguments regarding accrual or equitable tolling of the retaliation claim, Defendants' motion to dismiss counts two and three is GRANTED.

---

[10] Plaintiff withdrew his delayed accrual and equitable tolling arguments after Defendants filed an affidavit from the MPCSD's former counsel in support of their motion to dismiss. (ECF No. 70-2.) Attached as exhibits to that affidavit were (1) a Notice of Claim served on the MPCSD by Plaintiff's former counsel on March 25, 2009, noticing claims in connection with the conduct at issue in this lawsuit, (ECF No. 70-3), and (2) an April 23, 2009 letter from Plaintiff's former counsel regarding the notice of claim, in which Plaintiff's former counsel states, with regard to the April 3, 2009 letter from Defendant Schimpf, that he "cannot imagine that one could be in violation of any laws . . . by submitting relevant and necessary information to a court" and stating Plaintiff's intent to go forward with a case against the MPCSD. (ECF No. 70-4.)

17

**SPA-30**

**B.     State Law Claims**

As Plaintiff acknowledges, his Title IX claims "undergird[] the Court's subject matter jurisdiction for this action." (P's Opp. at 12.) Because the Title IX claims are untimely, no federal claims remain. The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's remaining state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

**C.     Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment is futile when the problem with a plaintiff's causes of action is substantive and better pleading will not cure it." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (cleaned up). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).

18

**SPA-31**

Plaintiff cross-moved for leave to amend his complaint should the Court determine that the conduct alleged does not fall within the CVA, (P's Opp. at 28), but the Court disposed of Plaintiff's Title IX claims without reaching that issue, (*see* note 3 above).  Accordingly, such an amendment of the Title IX claims would be futile, and Plaintiff's cross-motion to amend is DENIED.  The Court likewise declines to grant leave to amend in any other respect *sua sponte*, because the statute-of-limitations bar to the Title IX claims is substantive and cannot be rectified with better pleading.

*     *     *

The allegations in this case are disturbing, and the Court understands why Plaintiff might wish to pursue them now, even if he did not when he was younger.  But the law does not provide a federal forum in which to do so.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiff's Title IX claims are dismissed with prejudice, and Plaintiff's state law claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 68, 71), and close the case.

**SO ORDERED.**

Dated: November 3, 2021
   White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.